# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

JOSEPH DZWONKOWSKI, SR.,    :

                :

   Plaintiff,        :

v.                :

                :  CIVIL ACTION 05-00544-KD-C

JOSEPH DZWONKOWSKI, JR.,    :

ROBERT DZWONKOWSKI and    :

SONITROL OF MOBILE, INC., *et al.*,  :

                :

   Defendants.       :

## REPORT AND RECOMMENDATION

   This matter is before the Court on Defendants' Consolidated Motion for Award of Attorneys' Fees (Docs. 74, 75) and Plaintiff's Motion to Stay (Doc. 103). This matter has been referred to the undersigned for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all pertinent materials in the file, it is recommended that Defendants' motion for attorneys' fees be **DENIED in part** and **GRANTED in part**, and that Plaintiff's motion to stay be **DENIED.**

## I. Relevant Procedural Background

   1.   This federal action stems from litigation originating in the Circuit Court of Mobile County, Alabama, namely *Joseph Dzwonkowski, Sr. v. Sonitrol of Mobile, Inc., et al*, Civil Action No. 99-3842.51 (the "State Court" case). The case centers around a family dispute between Joseph Dzwonkowski, Sr. ("Plaintiff") and two of his sons, Robert Dzwonkowski and Joseph Dzwonkowski, Jr. ("Defendants"), regarding the ownership and control of the closely-held corporation Sonitrol of Mobile, Inc. ("Sonitrol" and "Defendant"). *Dzwonkowski v. Dzwonkowski*, 854 So.2d 598 (Ala. Civ. App. 2002) ("*Dzwonkowski I*"), *rev'd*, *Dzwonkowski v. Sonitrol of Mobile,*

*Inc.,* 892 So.2d 354 (Ala. Civ. App. 2004) ("*Dzwonkowski II*").  Specifically, according to the State Court record, the court held a trial before an advisory jury on two counterclaims seeking a declaration as to the ownership of the contested shares of Sonitrol stock.  *Dzwonkowski II,* 892 So.2d at 356-361.  The court then entered a default judgment against Plaintiff on the counterclaims and dismissed his claims against Defendants.  (*Id*. at 360).  This judgment was a sanction based upon Plaintiff's "abuse of the judicial system."  (*Id*. at 360-361).  Before the trial court determined the damages on Defendants' counterclaims, it directed entry of a Rule 54(b) final judgment.  (*Id*.)  The appellate court subsequently ruled that the trial court's Rule 54(b) judgment constituted an abuse of discretion such that it lacked jurisdiction over the appeal and remanded the case to the trial court. (*Id*. at 362-363).  Following remand, the trial court rebuffed Plaintiff's attempts to re-litigate the merits of the dismissed claims and defaulted counterclaims, ordering that the parties were to submit the issue of damages on affidavits.  (Doc. 54 at 16-18).

2.      On September 27, 2005, Plaintiff commenced this federal action by filing a lengthy Complaint against Defendants pursuant to 42 U.S.C.A. §§ 1983 and 1985, alleging deprivation of his equal protection and due process rights in the State Court proceedings.  (Doc. 1).

3.      On November 28, 2005, Defendants filed a motion to dismiss/stay and a motion for attorneys' fees, with numerous exhibits, asserting that Plaintiff's case was simply a continuation of the "vexatious and harassing" State Court litigation, this Court lacked subject matter jurisdiction, Plaintiff failed to state a claim upon which relief may be granted, and that the abstention and *Rooker-Feldman* doctrines applied to support dismissal of his claims.  (Docs. 7, 9, 10, 11).  The parties then engaged in extensive briefing in response thereto.  (Docs. 13, 15, 19, 21, 23, 25).

4.      On February 13, 2006, before this Court ruled on Defendant's motions, Plaintiff filed

motion for leave to file an amended complaint, stating that the proposed First Amended Complaint "presents a sharper more focused issue oriented complaint." (Doc. 29). Plaintiff's First Amended Complaint dramatically altered the counts in the Original complaint, by dropping all Section 1985 claims, dropping all but one narrow Section 1983 claim, and by adding claims of civil conspiracy, violations of RICO's civil provisions and three federal criminal statutes. (Docs. 29, 50). Plaintiff also sought to add several parties as defendants, including defense counsel and their law firms, and purported to realign the corporations at issue as plaintiffs. (*Id*.) In response, Defendants opposed the amendment, asserting that it was futile, violated an injunction by the State Court, and that any remaining claims were subject to abstention. (Doc. 30). Defendants added that Plaintiff's amendment was simply an attempt to avoid the sanction of attorneys' fees against him and constituted continuing vexatious litigation by submitting a "virtually new proposed Amended Complaint asserting revamped § 1983 claims as well as claims under RICO . . . ." (*Id*.) Defendants stated that "it is only after Defendants moved to dismiss. . . and filed a substantial Brief in support. . . delineating the multitude of grounds for dismissal or stay, that [Plaintiff or his counsel] . .. have fled to different albeit flawed theories of relief . . . ." (*Id*. at 7).

    5.    On March 2, 2006, Defendants filed a second motion for attorneys' fees in further opposition to Plaintiff's attempt to amend the Original complaint. (Docs. 34, 35, 36).

    6.    On March 7, 2006, one day after this Court instructed the parties to refrain from filing any more motions regarding the pending pleadings (Doc. 38), Plaintiff filed motions for leave to file a Superseding Amended Complaint, for sanctions, for summary judgment, for expungement of trial court pleadings, for a pretrial conference, and for "churning" the federal litigation (Docs. 39-43); however, two days later, he filed a motion to withdraw these pleadings (which was later granted).

3

(Docs. 45, 48).

7.      On March 9, 2006, Plaintiff filed two motions for leave to file the Superseding Amended Complaint ("Second Amended Complaint"). (Docs. 46, 47). Plaintiff's Second Amended Complaint again significantly altered the claims alleged, as he replaced the civil RICO claims with two new claims under the criminal RICO provisions (18 U.S.C. § 1962(c)-(d)) and asserted five new claims under federal criminal code provisions. (*Id.*) Plaintiff asserted further, that "the superseding amended complaint, in all respects, and for all purposes[,] supersedes the amended complaint." (Doc. 46 at Ex. 4 at 1). Plaintiff added that the superseding amended complaint was "carefully drafted . . .[and] presents only clearly defined federal claims . . . [and] Plaintiff does not anticipate any additional amendments . . . ." (*Id.* at 1-2).

8.      On May 1, 2006, U.S. District Judge Kristi K. DuBose ("Judge DuBose") ruled that Plaintiff's motion for leave to file the First Amended Complaint was moot, and that the proceedings against the newly-named defendants were due to be stayed pending a determination on jurisdictional issues. (Doc. 49). Judge DuBose also granted Plaintiff's motion for leave to file a Second Amended Complaint, yet in so doing, she noted "the difficulties inherent" in Plaintiff's "moving target" approach, adding that she had allowed the second amendment because no discovery had been conducted and because granting the motion was "in the interest of proceeding with a stable statement of plaintiff's claims." (*Id.* at 1-3). Next, Judge DuBose denied Defendants' motion to dismiss without prejudice because Plaintiff had significantly altered his federal claims and "scarcely a single legal theory or cause of action remains from the original complaint." (*Id.* at 3). Judge DuBose then ruled that Defendants' motions for attorneys' fees and sanctions should be held in abeyance, and ordered Plaintiff to show cause why his case should not be dismissed for lack of jurisdiction based

4

on the issues as raised by Defendants in their motion to dismiss.[1]  (Doc. 49).  Judge DuBose added

that "[a]ny further requests for amendment will be carefully scrutinized and a clear showing of

necessity and the interests of justice will be required."  (*Id*. at 2).

9.      On May 2, 2006, Plaintiff filed the First Amended Complaint and the Second

Amended Complaint.  (Docs. 50, 51).

10.     On May 20, 2006, Plaintiff filed a motion to realign Sonitrol as a party-plaintiff.

(Doc. 57).

11.     On May 23, 2006, in denying Plaintiff's motion to realign, Judge DuBose noted the

problems encountered by the parties' "apparently never-ending spate of motions and responses on

the issue of dismissal of plaintiff's initial complaint and the amendment of that complaint . . . ."

(Doc. 58 at 1 at n.1).

12.     Plaintiff subsequently filed two additional motions to amend: one in the body of his

response to the Court's order on jurisdiction; and another on June 8, 2006, in a motion for leave to

file the Third Amended Complaint, to supercede the motion in the response.  (Docs. 54, 64, 65).

13.     On July 19, 2006, Judge DuBose denied Plaintiff's motion for leave to file a Third

Amended Complaint and ruled that all claims in his Second Amended Complaint were due to be

dismissed due to a lack of standing, such that this Court lacked jurisdiction.  (Doc. 67).  In her

Order, Judge DuBose detailed the history of Plaintiff's filings: 1) he alleged seven Section 1983 and

---

[1]Judge DuBose stated that despite the denial of Defendants' motion due to Plaintiff's amended pleadings, the motion raised a jurisdictional issue as well as related issues of comity.  (*Id*. at 4).  Judge DuBose observed that counts one and two of the Second Amended Complaint asserted conspiracies and alleged violations of federal criminal statutes; counts five, six and seven alleged violations of other criminal statutes (bank fraud, money laundering); and counts three and four alleged civil RICO violations (racketeering activities).  (Doc. 49 at 5-7).  Judge DuBose ordered Plaintiff to show cause why his Second Amended Complaint should not be dismissed for lack of jurisdiction and address the applicability of abstention to any claims to which he asserts standing.  (*Id*. at 10).

Section 1985 claims in the Original complaint; 2) after Defendants filed the motion to dismiss, he dropped all the Section 1985 claims and only alleged one narrow Section 1983 claim, and added civil RICO claims in the First Amended Complaint; 3) Defendants filed another opposition, and in response, Plaintiff dropped the remaining Section 1983 claim as well as his civil RICO claims in his Second Amended Complaint; 4) the Second Amended Complaint then proceeded on only criminal liability allegations but was again challenged by Defendants and questioned by this Court, prompting Plaintiff to again amend his claims and seek leave to file a Third Amended Complaint; and 5) in the proposed Third Amended Complaint, he dropped all the criminal liability allegations and attempted to reassert civil RICO and Section 1983 claims.  (*Id.*)  Judge DuBose stated as follows:

> **The court has previously noted Plaintiff's moving target approach to this litigation**. . . .  In his Motion for Leave to file (doc. 46) his Second Amended Complaint, plaintiff represented that this time his pleading was "carefully drafted," that it "present[ed] only clearly defined federal claims" and that "[p]laintiff did not anticipate any additional amendments." . . . .  In granting Plaintiff's Motion for Leave to File Second Amended Complaint, **the court held that, because of plaintiff's pattern of amending his pleadings to make wholesale changes to his claims after opposition but before a ruling, "[a]ny further requests for amendment will be carefully scrutinized and a clear showing of necessity and the interests of justice will be required**."  Plaintiff has failed to make such a showing.
>
>           * * *
>
> Stripped of irrelevancies, **plaintiff's argument in favor of a further wholesale amendment is nothing more than a tacit acknowledgment that he will lose on the current set of claims. The bare request that plaintiff be allowed, yet again, to avoid an adverse ruling by the expedient of recasting his claims is insufficient to demonstrate that justice requires that the amendment be granted**.  His motion does not constitute "a clear showing of necessity and the interests of justice" as ordered by the court.
>
> Additionally, **the court finds that plaintiff's motion . . . is due to be denied for other reasons**. . . . Clearly, plaintiff has repeated opportunities to cure deficiencies in his pleadings, but has failed to do so.  Further . . . **plaintiff's "moving target" approach to this litigation demonstrates a dilatory motive and unduly prejudices the defendants, who have responded to each and every statement of**

**plaintiff's claims without obtaining review by the court. The repeated wholesale alteration of the claims also interferes with the court's interest in addressing the merits of the claims and reaching a final determination. The court's research and work preparatory to entering orders on each of the prior pleadings has been wasted**. . . . **Plaintiff now seeks to amend yet again in order to reinstate several causes of action he had previously dismissed[fn5] in response to defendants' arguments and to introduce still more claims**.

* * *

(*Id*. at 3-4, 6-7 (emphasis added)).  Judge DuBose ruled also, that "Plaintiff's wholesale amendment of the complaint in effect operated as a voluntary dismissal of his prior claims. See Fed.R.Civ. P. 41(a).  Were the court to allow plaintiff to re-plead these claims, it would be appropriate to tax plaintiff with attorneys' fees for defendant. See Fed.R.Civ.P. 41(d)."  (*Id*. at 7 at n. 5).  With regard to Plaintiff's Second Amended Complaint, Judge DuBose ruled that Plaintiff admitted that he lacked standing, such that his fifth, sixth and seventh counts were due to be dismissed.  (*Id*. at 7).  Judge DuBose also found that Plaintiff lacked standing for counts two, three and four and that "plaintiff intentionally deleted all reference in the Second Amended Complaint to the [RICO] statute's civil remedies . . . for tactical purposes."  (*Id*. at 7-8).

14.    On July 26, 2006, Judge DuBose denied Plaintiff's motion for sanctions and "terminated" Defendants' motions for attorneys' fees in light of the dismissal of Plaintiff's claims. (Doc. 68).  In so doing, she instructed Defendants to file a consolidated motion (which would supercede their previously-filed motions), if they desired to pursue a motion for fees.  (*Id*.)

15.    On August 2, 2006, Judge DuBose ruled on Plaintiff's motion to reconsider (Doc. 70) the Order dismissing his Second Amended Complaint, finding that he failed to demonstrate that the denial of leave to amend or dismissal were clearly erroneous or materially unjust.  (Doc. 72).

16.    On August 4, 2006, Defendants filed a consolidated motion for attorneys' fees and other sanctions against Plaintiff and/or his counsel, pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927

and Rule 11 of the *Federal Rules of Civil Procedure*. (Docs. 74, 75, 81, 82). Defendants contend that: 1) they are "prevailing parties" under Section 1988 because Plaintiff repeatedly amended his Original complaint to avoid an unfavorable judgment on the merits; 2) Plaintiff's federal filings constitute vexatious and harassing litigation because the case was initiated in bad faith for the improper purposes of harassment and to needlessly increase litigation costs, as he already has ongoing proceedings at the State Court level through which to pursue any constitutional claims; 3) Plaintiff's legal contentions are unwarranted under existing law and any non-frivolous argument, and lack evidentiary support in the record; and 4) both Plaintiff and his counsel may be jointly liable. (*Id.*) In response, Plaintiff contends that to be awarded attorneys' fees, Defendants must establish that his federal claims were "objectively unreasonable." (Docs. 80, 87, 91). Plaintiff adds that his "claim has remained constant," he has "maintained the same substantive civil rights deprivation claims against the defendants[] and "[a]t no point in time in this federal litigation has Plaintiff voluntarily or otherwise dismissed his civil rights deprivation claims against the Defendants." (Docs. 80 at 6, 87 at 24-25). Plaintiff argues also, that "[t]he defendants have wholly failed to demonstrate a clear delineation of attorneys' work efforts[] and claims on which they contend they prevailed[,] and "indiscriminately seek attorneys' fee awards for all of their claims[] and for all of their attorney work efforts[,] but that due to a lack of itemization neither he nor this Court can "intelligibly assess the merits of the Defendants' attorneys' fees claims." (Doc. 87 at 32). Plaintiff states further, that defense counsel may have duplicated work efforts, and his counsel's excessive revisions to his Original complaint were due to his suffering from obsessive compulsive disorder. (*Id.* at 33, 43).

17.     On August 4, 2006, Defendants represented to this Court that they are "prepared to

submit affidavits and other information . . . in accordance with any subsequent Order of Court establishing procedures to determine the amount of attorneys' fees applicable to each person." (Doc. 75).

18.     On September 5, 2006, the undersigned's ordered that Defendants submit "all affidavits and other pertinent information regarding attorneys fees that it wishes the Court to consider." (Doc. 79 at 1).  Defendants were specifically instructed that "[t]hose affidavits and other information must clearly reflect the time requested to be compensated, the services performed, and the hourly rate requested."  (*Id*. at 2).

19.     On September 15, 2006, Defendants filed two affidavits (Docs. 81, 82) in support of their fees motion, with a motion for *in camera* review of the related invoices, asserting that:

> this Federal Litigation was filed during the pendency of the State Litigation, and the latter is still pending, the Invoices contain sensitive information which could be used by Plaintiff . . . or his counsel . . . in further pursuit of the vexatious and harassing State Court litigation . . . . [and] . . . . [t]he Invoices contain attorney work product and associated salient information regarding the strategies and other discussions of counsel with their clients which are protected by the attorney client privilege and/or work product doctrine, and if disseminated, could be used by [Plaintiff and his counsel] . . . to continue their vexatious and harassing litigation in other courts against these Defendants and their undersigned counsel of record.

(Doc. 83).

20.     On September 20, 2006, Judge DuBose concluded that all issues had been resolved but for the attorney's fees motion.  (Doc. 85).

21.     On September 26, 2006, the undersigned denied Defendants' motion for *in camera* review in a sealed order and ruled that any materials which had been submitted for *in camera* review would <u>not</u> be considered unless certain requirements were met.  (Doc. 86).  No additional steps were taken by Defendants, however, to meet these requirements.

22.     On September 30, 2006, Plaintiff filed an opposition to Defendants' motion for *in camera* review, citing due process violations and asserting that Defendants were endeavoring to present "sensitive secret evidence" to this Court.  (Doc. 91).

23.     On October 19, 2006, Defendants replied to Plaintiff's opposition, seeming to wholly disregard this Court's denial of their motion for *in camera* review of the invoices.[2]  (Doc. 95).

24.     On July 2, 2007, Plaintiff filed a Motion to Stay the federal proceedings until after such time as the Alabama Supreme Court rules on his Writ of Mandamus, seeking review of the merits of the State Court case.  (Docs. 103, 106).  Defendants oppose any such stay.  (Doc. 105).

## II.    <u>Conclusions of Law</u>

## A.    <u>Motion To Stay</u>

On July 2, 2007, Plaintiff filed a motion to stay proceedings in this case pending the Alabama Supreme Court's Writ of Mandamus review of the merits of the State Court's treatment and disposition of *Dzwonkowski v. Sonitrol of Mobile, Inc.,* 854 So.2d 598 (Ala. Civ. App. 2002), *reh'g den.,* Oct. 4, 2002, *cert. den.,* Feb. 21, 2003 (Ala. 2003) ("*Dzwonkowski I*").  (Doc. 103). Plaintiff disputes the validity of the State Court rulings and contends that: 1) entry of a stay will not prejudice Defendants, will promote judicial economy, will provide for the finality of currently disputed facts and will avoid additional costs; 2) "[t]his court relied on the Alabama trial court's post-*Dzwonkowski I* rulings, and findings of fact, in its dismissal of plaintiff's federal action[]"and the imposition of sanctions in this federal action "is driven by this federal court's reliance on the validity of the Alabama trial court's ruling that plaintiff's Alabama litigation is harassing and

---

[2]Defendants assert that the invoices referenced in the affidavits "were submitted [for *in camera* review] with handwritten notes regarding the allocation of work effort to the specific topic[,]" "[a] review of the Invoices submitted . . . reflects the absence of any duplication of work effort[,]" and that the expenses "are itemized on the Invoices and are self-evidently justifiable."  (*Id*. at 14-15).

vexatious[;]" and 3) a reaffirmation of *Dzwonkowski I* will result in Plaintiff becoming the majority stockholder in Sonitrol, to give him standing to pursue his RICO claims against Defendants (which were dismissed due to a lack of standing), will "negate the legality of the Alabama trial court's order that was relied on by this federal court[]" and will "negate the imposition of over $420,000.00 in sanctions imposed by the Alabama trial court[.]" (Doc. 103 at 2-4). Plaintiff's motion is without merit.

First, Plaintiff fails to cite to any case law in support of his argument, much less any evidence to support his claim that a stay will aid judicial economy, finalize currently disputed facts, avoid additional costs and will not prejudice Defendants. Due to the manner in which this litigation has proceeded to date, the undersigned is at a loss as to precisely how entry of a stay, at this point, would result in anything other than prejudice to Defendants, an undermining of judicial economy, an increase to the "currently disputed facts" and additional litigation costs, especially as Judge DuBose has ruled that Plaintiff's "moving target approach" to this litigation has *already* resulted in undue prejudice to Defendants. *See infra* Section I.

Second, Plaintiff contends that this Court rendered "factual and legal determinations that . . . the Alabama trial court properly entered a default against plaintiff, denying all of his claims, and granting all of defendants' claims (see Doc. 67, page 2-3)." There is no indication in the record that this Court relied upon the State Court findings to arrive at the conclusion that dismissal of Plaintiff's federal case was appropriate. While Judge DuBose discussed the State Court history as part of the overall litigation record, she articulated the standing issue relative to this Court's jurisdiction over Plaintiff's federal filings as the grounds for dismissal. *See infra*. Additionally, the baseless nature of Plaintiff's argument is underscored by the fact that Judge DuBose's Order simply summarized

11

the nature and history of the State Court litigation as set forth in *Dzwonkowski II*, 892 So.2d 354, 356-361 (Ala. Civ. App. 2004): "[d]uring the proceedings, the trial court entered a default judgment against Joe Sr. on the counterclaims and dismissed his claims against Sonitrol, Robert, and Joe Jr. *Id.* at 357." (Doc. 67 at 2).   Contrary to Plaintiff's quotation then, Judge DuBose did not render any findings or determinations regarding the propriety of actions taken at the State Court level, and by no means did she rule that the State Court "properly entered a default judgment" against him.[3] Rather, Judge DuBose relied upon the allegations in Plaintiff's federal filings, namely the Second Amended Complaint, from which to determine dismissal.   Likewise, Judge DuBose did not rely "on the validity of the Alabama trial court's ruling that plaintiff's Alabama litigation is harassing and vexatious[;]" rather, she concluded, after witnessing this litigation first-hand, that Plaintiff engaged in a "moving target approach" which "demonstrate[d] a dilatory motive and unduly prejudice[d] the defendants[.]"   (Doc. 67 at 6-7).

Third, Plaintiff contends that a reaffirmation of *Dzwonkowski I* by the Alabama Supreme Court will declare him majority owner of Sonitrol's stock, to thus give him standing to pursue RICO claims against Defendants (which have already been dismissed by this Court).   (Doc. 103).   Plaintiff, however, conceded that he lacks standing for Counts Five, Six and Seven in his Second Amended Complaint (for tax fraud, bank fraud and money laundering).   (Doc. 54).   As detailed by Judge DuBose, Counts Three and Four of his Second Amended Complaint cite criminal provisions

---

[3]Judge DuBose even acknowledged Plaintiff's argument -- that the State Court's order of dismissal and entry of default were made without notice and violated his due process and equal protection rights – in her Order.  (Doc. 67 at 3 at n. 3).  Indeed, the most that Judge DuBose stated relative to the State Court litigation, was that "though the court does not reach this issue, all of plaintiff's claims in the proposed Third Amended Complaint are related to or arise from the rulings of the state court in the underlying litigation and appear to be subject to *Colorado River* abstention doctrine.  Additionally, several of the claims appear on their face to be subject to dismissal on other grounds previously stated by defendant or noted by the court."  (Doc. 67 at 7).

outlawing specific racketeering activities (18 U.S.C. § 1962(c)-(d)).  While Plaintiff previously stated civil RICO claims, he amended those pleadings, replacing them with the criminal versions such that "[t]here is no basis to deem the citation of the criminal RICO provisions as accidental misstatements."  (Doc. 67 at 8).  Judge DuBose concluded that Plaintiff lacked standing to pursue criminal RICO claims because it "foresees criminal law enforcement by the Federal Government[;]" and it appeared that Plaintiff "intentionally deleted" all reference, in the Second Amended Complaint, to the statute's Section 1964(c) civil remedies "for tactical purposes."  (*Id.*)  In short, regardless of the State Court ruling, Plaintiff would be unable to revive his civil rights claims.

Fourth,  this Court dismissed his Second Amended Complaint on July 19, 2006, almost one year before Plaintiff sought entry of a stay.  As articulated by Judge DuBose (Doc. 85), no substantive or dispositive pleadings remain -- to then be stayed -- other than the present fees motion. Thus, it is the recommendation of the undersigned that Plaintiff's motion to stay be **DENIED**.

## B.    <u>Attorneys' Fees & Expenses</u>

In their motion, Defendants seek a total attorneys' fee award of **$85,797.21** pursuant to 42 U.S.C. § 1988 (as against Plaintiff) and pursuant to Rule 11 of the *Federal Rules of Civil Procedure* and 28 U.S.C. § 1927 (as against Plaintiff and/or Plaintiff's counsel).  This total requested amount represents **$83,160.00** in attorneys' fees for **423 hours** of work expended by five attorneys at two law firms, plus **$2,637.21** in expenses.  Specifically, Defendants contend that they are "prevailing parties" due to Plaintiff's numerous amendments to his Original complaint to avoid an unfavorable ruling on the merits and because he and his counsel initiated this groundless litigation in bad faith, to harass Defendants and to multiply the proceedings by re-litigating issues which have been addressed in State Court.  (Docs. 75, 75).  In support of their motion, Defendants submitted two

affidavits.  (Docs. 81, 82).  In response, Plaintiff asserts that he has maintained the civil rights deprivation claims and has not dismissed same, adding that Defendants have failed to demonstrate a clear delineation of attorneys' work efforts (Doc. 87).

**1.      Section 1988 Fees**

    **a.      Relevant Law**

A court, in its sound discretion, may award reasonable attorneys' fees under Section 1988 to a prevailing party in certain designated civil rights cases -- including those brought under Sections 1983 and 1985.  42 U.S.C. § 1988(b); *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978).  Specifically, Section 1988(b) provides, in relevant part, as follows:

> In any action or proceeding to enforce a provision of section . . . 1983, 1985 . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs.

42 U.S.C. § 1988(b).[4]  In *Christianburg*, the Supreme Court set forth the following guidance:

> [I]t is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. That kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.
>
>                         * * *
>
> Hence, a plaintiff should not be assessed his opponent's attorney's fees unless a court

---

[4]This statute is interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights.  *Williams v. City of Fairburn*, 702 F.2d 973, 976 (11th Cir. 1983). Although awarding attorneys' fees is within the discretion of the trial court, such discretion is narrow, in that attorneys' fees should be denied only when special circumstances would render an award unjust, *Solomon v. City of Gainesville*, 796 F.2d 1464, 1466 (11th Cir. 1986), or the statute is being subverted into a ruse for providing "windfalls" to attorneys. *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). One need not succeed on all claims in order to obtain attorneys' fees. *Id.*

finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so.

*Christianburg*, 434 U.S. at 421-422.  Applying *Christianburg*, the Eleventh Circuit established a three-part process for determining a party's entitlement to fees: 1) determine whether the party "prevailed" in the statutory sense; 2) calculate the "lodestar" (the number of hours, tempered by billing judgment, spent in the legal work on the case multiplied by a reasonable market rate in the local area); and 3) adjust the lodestar to account for other considerations, such as the relation of the results obtained to the work done.  *See, e.g., Dillard v. City of Greensboro*, 213 F.3d 1347, 1353 (11th Cir. 2000).

Section 1988 then, limits eligibility for attorneys' fees to a "prevailing party," and a party is not deemed prevailing if it only "conceivably could benefit" from the court's judgment.  *See, e.g., Barnes v. Broward County Sheriff's Office*, 190 F.3d 1274, 1278 (11th Cir. 1999).  Instead, there must exist evidence that the court's judgment materially alters the legal relationship between the parties.  *See, e.g., Farrar v. Hobby,* 506 U.S. 103, 111 (1992).  And notably, the Supreme Court has specifically directed that while a prevailing plaintiff ordinarily is to be awarded attorneys' fees in all but special circumstances, a district court may in its discretion award attorneys' fees to a prevailing defendant upon a finding "that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith."  *Christianburg,* 424 U.S. at 417, 421.  *See also Hensley v. Eckerhart,* 461 U.S. 424, 429 at n.2 (1983)*; Baker v. Alderman,* 158 F.3d 516, 525-526 (11th Cir. 1998).[5]  To determine whether a suit is "frivolous, unreasonable or

---

[5]*See also Quintana v. Jenne*, 414 F.3d 1306, 1309 (11th Cir. 2005); *Bonner v. Mobile Energy Servs. Co.,* 246 F.3d 1303, 1304 (11th Cir. 2001); *Turner v. Sungard Bus. Sys., Inc.,* 91 F.3d 1418, 1422 (11th Cir.1996); *Head v. Medford,* 62 F.3d 351, 355 (11th Cir. 1995).  Findings of frivolity have been sustained when either a motion for summary judgment or a motion for involuntary dismissal has been granted in instances where plaintiffs did not introduce any evidence to support their claim. *Head v.*

without foundation," courts focus on whether the case is so lacking in arguable merit as to be groundless or without foundation thereby justifying a fee and expense award under Section 1988's fee-shifting provision, because if the award cannot be upheld on this basis, it cannot be upheld under Section 1927 or as an exercise of a court's inherent power (both of which require, in addition to objective frivolity, conduct by counsel that is at least "tantamount to bad faith").  *See, e.g.*, *Hughes v. Rowe*, 449 U.S. 5, 14 (1980); *Christianburg*, 434 U.S. at 421;  *Cordoba v. Dillard's Inc*., 419 F.3d 1169, 1176 (11th Cir. 2005).

Courts in the Eleventh Circuit assess three factors during case-by-case[6] frivolity determinations: 1) whether the plaintiff established a *prima facie* case; 2) whether the defendant offered to settle; and 3) whether the trial court dismissed the case prior to trial on the merits. *Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985).  *See also e.g., Pearson v. Linden Lumber Co., Inc,* 2006 WL 997153, *10 (S.D. Ala. Mar. 21, 2006); *Bruce v. City of Gainesville, Georgia,* 177 F.3d 949, 952 (11th Cir. 1999); *Head v. Medford,* 62 F.3d 351, 355-356 (11th Cir. 1995).  In applying these factors, courts must remain cognizant of the definition of frivolity (*i.e.*, whether an argument is so lacking in arguable merit as to be groundless or without foundation). *Sullivan*, 773 F.2d at 1188.  "However, no doubt in recognition of the Supreme Court's admonition in *Christianburg* that courts are to resist the temptation to engage in Monday-morning-quarterbacking, the Eleventh Circuit, in *Sullivan* and cases subsequent thereto, has taken pains to remind the district courts that the foregoing factors are general guidelines only, 'not hard and fast

---

*Medford,* 62 F.3d 351, 355 (11th Cir. 1995). When a plaintiff introduces evidence sufficient to support a claim, a finding of frivolity will not stand. *Id* at 356.

[6]The Eleventh Circuit recently clarified that the *Sullivan* factors should be used as general guidelines because "[d]eterminations regarding frivolity are to be made on a case-by-case basis." *Quintana,* 414 F.3d at 1309.

rules[.]'" *Pearson*, 2006 WL 997153, *10.  The Eleventh Circuit has also cautioned that the standard for awarding attorneys' fees to a prevailing defendant is a "stringent one."[7]  *See, e.g., Walker v. Nationsbank of Florida.*, 53 F.3d 1548, 1558 (11th Cir. 1995); *Graydon v. City of Orlando*, 171 Fed. Appx. 284, 285-286 (11th Cir. 2006); *Bates v. Islamorada*, 2007 WL 2113586, *4 (S.D. Fla. Jul. 23, 2007).  Further, a district court has to consider the role that discovery plays in the frivolity analysis, as while a claim may seem unreasonable at the end of litigation, it may have been reasonable at the outset "if decisive facts did not emerge until discovery or trial, or if the law changed or clarified in the midst of litigation."  *See, e.g., Pearson*, 2006 WL 997513, *11.

Second, courts must determine the amount of reasonable attorneys' fees to award to a prevailing party pursuant to 42 U.S.C. § 1988 (*i.e.*, the "lodestar") -- as established in *Hensley v. Eckerhart*, 461 U.S. 424, 433-437 (1983) and *Blum v. Stenson*, 465 U.S. 886, 896-897 (1984).  The lodestar is calculated by totaling "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate[:]"

> This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and the rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly. The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important

---

[7]Namely, "the district court should resist the temptation to conclude that because a plaintiff did not ultimately prevail, the action must have been unreasonable or without foundation." *Id.* at 1558. When faced with such a situation, courts have been directed to "focus on the question of whether the case is seriously lacking in arguable merit." *Id.*  In this sense, "'meritless' is to be understood as meaning groundless or without foundation, rather than simply that the plaintiff has ultimately lost his case." *Christiansburg,* 434 U.S. at 421.

here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."

*Hensley*, 461 U.S. at 433-434 (emphasis in original). Fee applicants must establish that their hourly rates are reasonable. A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience and reputation. *See, e.g., Gaines v. Dougherty County Board of Educ.,* 775 F.2d 1565, 1571 (11th Cir. 1985). Satisfactory evidence of the prevailing market rate "at a minimum is more than the affidavit of the attorney performing the work" and must address rates actually billed and paid in similar lawsuits. *Id.* at 1299.

Courts in the Eleventh Circuit are guided by 12 factors set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717-719 (5th Cir. 1974),[8] *overruled on other grounds Blanchard v. Bergeron*, 489 U.S. 87 (1989), with the caveat that "many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonably hourly rate." *Hensley*, 461 U.S. at 434, n. 9. These factors include: 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney due to acceptance of the case; 5) the customary fee in the community; 6) whether the fee is fixed or contingent; 7) time limitations imposed by the client or circumstances; 8) the amount involved and the results obtained; 9) the experience, reputation, and ability of the attorneys; 10) the "undesirability" of the case; 11) the nature and length of the professional relationship with the client; and 12) awards in similar cases. *Johnson*, 488 F.2d at 717-719. *See also Gaines v. Dougherty County Bd. of Ed.,* 775 F.2d 1565, 1571, n. 13 (11th Cir. 1985);

---

[8]*In Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit Court of Appeals adopted as precedent the decisions of the former Fifth Circuit before October 1, 1981.

*Jones v. Central Soya Co.,* 748 F.2d 586, 588, n. 1 (11th Cir. 1984); *Dowdell v. City of Apopka,* 698 F.2d 1181, 1187, n. 8 (11th Cir. 1983).

Moreover, fee applicants bear the burden of establishing reasonable hours (*i.e.*, entitlement and documenting the appropriate hours) and as such, redundant hours must also be excluded from the reasonable hours claimed by the fee applicant. Such hours generally occur where more than one attorney represents a client.[9] *See, e.g., Hensley,* 461 U.S. at 434; *Norman v. Housing Authority,* 836 F.2d 1292, 1301-1302 (11th Cir. 1988). Nevertheless, a fee applicant is entitled to recover for the hours of multiple attorneys if he satisfies his burden of showing that the time spent by those attorneys reflects a distinct contribution of each lawyer and is the customary practice of multiple-lawyer litigation. *See, e.g., Barnes,* 168 F.3d at 433.

Further, applicants must also evidence that they have exercised billing judgment,[10] and must exclude from their fee applications "excessive, redundant, or otherwise unnecessary [hours] . . . that

[9] While "[t]here is nothing inherently unreasonable about a client having multiple attorneys[,]" *Norman,* 836 F.2d at 1302, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary" because, for example, the case is overstaffed. *Hensley,* 461 U.S. at 434. Work performed by multiple attorneys is not subject to reduction where the attorneys were not unreasonably doing the same work. *See, e.g., Jones,* 748 F.2d at 594; *Johnson,* 706 F.2d at 1208.

[10] *See, e.g. Baker v. Apfel*, 2000 WL 284215 (S.D. Ala. Feb. 23, 2000); *ACLU of Georgia v. Barnes,* 168 F.3d 423, 428 (11th Cir. 1999) (providing that "[i]f fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are 'excessive, redundant, or otherwise unnecessary.' Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded[]"); *Norman v. Housing Authority,* 836 F.2d 1292, 1301 (11th Cir. 1988) (finding that "excluding excessive or otherwise unnecessary hours under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis"). *See also Cullens v. Geogia Dep't of Transportation,* 29 F.3d 1489, 1491-1492 (11th Cir. 1994); *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir. 1994); *Jean v. Nelson,* 863 F.2d 759, 772-773 (11th Cir. 1988), *aff'd sub nom, Commissioner, I.N.S. v. Jean,* 496 U.S. 154 (1990); *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 563 (1986).

would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill,*

*reputation or experience of counsel*[:]*"*

> If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the amount of hours for which payment is sought, pruning out those that are "excessive, redundant, or otherwise unnecessary." Courts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.

*Barnes,* 168 F.3d at 428 (citations omitted).

Finally, fee applicants bear the burden of providing the necessary documentation in support

of their request:

> . . . . fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity . . . . A well-prepared fee petition also would include a summary, grouping the time entries by the nature of the activity or stage of the case.

*See, e.g., Norman*, 836 F.2d at 1303-1304 (citations omitted). *See also Barnes,* 168 F.3d at 427.

*Accord Coastal Fuels Mktg., Inc. v. Florida Express Shipping Co.,* 207 F.3d 1247, 1252 (11th Cir.

2000). Parties opposing fee applications also have obligations, as their objections and proof

concerning hours they want excluded need to be "reasonably precise." *Barnes*, 168 F.3d at 428.

Still, courts are often faced with fee applications that are not well-prepared. *Id*. In such cases, the

court "is itself an expert on the question and may consider its own knowledge and experience

concerning reasonable and proper fees and may form an independent judgment either with or

without the aid of witnesses as to value." *Id.* With respect to establishing what is reasonable,

however, the importance of counsel keeping detailed records of the work done so as to be able to

sustain a claim for compensation remains crucial. *See, e.g., Jean,* 863 F.2d 759. Failure to submit

such records will result in a reduced fee award or even disallowance of the fee altogether; thus,

where documentation or testimonial support is lacking, courts may make the award on its own experience as part of its inherent powers. *See, e.g., Norman*, 836 F.2d at 1301-1303. In so doing, however, a court's order on attorneys' fees must allow for meaningful appellate review and should articulate reasons for its decision and show some calculations. *Id.* Similarly, if a court disallows hours, it must explain which hours are disallowed and the reasons for same. *Id.* at 1304.

Third, courts next determine whether any adjustments to the lodestar are applicable, based on a number of considerations, including the relation of the results obtained to the work done. *See, e.g., Dillard*, 213 F.3d at 1353; *Blum*, 465 U.S. at 897; *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). At this point also, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses and hours incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under §1988[]" and "the standard of reasonableness is to be given a liberal interpretation." *NAACP v. City of Evergreen, Ala.,* 812 F.2d 1332, 1337 (11th Cir. 1987); *Dowdell,* 698 F.2d at 1192; *Barnes*, 168 F.3d at 427. In assessing the applicability of adjustments, courts may also consider other *Johnson* factors that were not made a part of the lodestar calculation. *Id.*

**b.**     **Application**[11]

1)     Prevailing Party Status

With the foregoing principles in mind, the undersigned considers first whether Defendants, as fee applicants, have satisfied their burden of establishing that they are prevailing parties. *See, e.g., Christiansburg,* 434 U.S. at 421-422; *Sayers v. Stewart Sleep Center, Inc.,* 140 F.3d 1351, 1353

---

[11]In so doing, the undersigned notes that this Court's Section 1988 determination has been narrowed because Defendants have conceded that Section 1988 attorneys' fees are only awardable with regard to the fees incurred in defending the Section 1983 and 1985 claims in the Original Complaint and the Section 1983 claim in the First Amended Complaint -- not any other claims. (Doc. 75 at 8-9).

(11th Cir. 1998); *Hughes,* 499 U.S. at 14; *Pearson,* 2006 WL 997153, *9; *Cordoba,* 419 F.3d at 1180.[12] While defendants are not ordinarily deemed prevailing parties in situations where a plaintiff voluntarily dismisses his claims, *see Marquart v. Lodge* 837, 26 F.3d 842 (8th Cir. 1994), they can be deemed prevailing parties if they present proof that the plaintiff dismissed his claims to avoid an expected unfavorable judicial determination on the merits.  *See, e.g., Dean v. Riser*, 240 F.3d 505, 511 (5th Cir. 2001) (concluding that the flexible rule -- that a defendant is not a prevailing party under Section 1988 when a civil rights plaintiff voluntarily dismisses his claim unless the defendant can demonstrate that he withdrew to avoid a disfavorable judgment on the merits -- should govern the policy considerations surrounding the law of attorneys' fees for prevailing civil rights litigants and should balance the concerns for encouraging vigorous enforcement of civil rights against discouraging frivolous litigation "within the specific and unique context of each individual case").[13] Such is the case here.

Specifically, Defendants are prevailing parties with regard to Plaintiff's Section 1983 and Section 1985 claims because this Court previously ruled that Plaintiff's amendments to his Original complaint and First Amended Complaint constituted a Rule 41(a) voluntary dismissal of same.  *See*

---

[12]*See, e.g., Hughes v. Unified Sch. Dist. # 330,* 872 F. Supp. 882, 885 (D. Kan. 1994); *Farrar*, 506 U.S. 103.

[13]*See also Jeralds v. City of Orlando*, 194 F. Supp. 2d 1305, 1328-1329 (M.D. Fla. 2002) (ruling that Defendants were prevailing parties because the plaintiff "cannot avoid sanctions relating to his retaliation claim simply by dismissing the retaliation claim in order to avoid an unfavorable judgment on the merits[]"); *Fernandez v. Southside Hospital*, 593 F. Supp. 840-843-844 (E.D.N.Y. 1984) (holding that "[c]ertainly, it cannot be said that a defendant *always* prevails when a plaintiff voluntarily dismisses his lawsuit without prejudice. It would be incorrect and illogical, however, to hold that a defendant never prevails upon such a voluntary dismissal. The answer, we believe, lies in examining the circumstances surrounding the voluntary dismissal. For example, where the complaint is clearly frivolous or there have been proceedings on the merits or substantial discovery . . ."). *Cf. Chacon v. Ezekiel,* 957 F. Supp. 1265, 1267 (S.D. Fla. 1997) (holding that civil rights defendant could not be a prevailing party where there had been no judicial adjudication on the merits as plaintiff voluntarily dismissed her claims pursuant to Fed.R.Civ.P. 41).

*infra* Section I.  The record reveals that while Plaintiff initially alleged seven Section 1983 and

Section 1985 claims in the Original complaint, in response to Defendants' motion to dismiss (Doc.

9), he subsequently dropped all of the Section 1985 claims and alleged only one (different and more

narrow) Section 1983 claim along with civil RICO claims, through the filing of the First Amended

Complaint.  *See infra* Section I.  In so doing, Plaintiff's motion for leave to file the First Amended

Complaint asserted that it was a "sharper more focused issue oriented complaint."  (Doc. 29 at 1).

Subsequently, in response to Defendants' second motion to dismiss (which asserted the futility of

Plaintiff's claims in the First Amended Complaint) (Doc. 35), Plaintiff sought leave to file a Second

(Superseding) Amended Complaint, and in same, abandoned all of his civil rights claims by

dropping the one Section 1983 claim which remained.  In his motion for leave to file the Second

(Superseding) Complaint, he also stated: that it had been "carefully drafted" and "presents only

clearly defined federal claims;" that "Plaintiff's remaining claims are predicated" on 18 U.S.C. §

242, 18 U.S.C. §§ 1961-1964 RICO, 26 U.S.C. §§ 7201 and 7206(2), 18 U.S.C. §§ 1343, 1344 and

1956; and that it superseded the First Amended Complaint in every way and he did not anticipate

any other amendments. (Doc. 39 at 1-7).  As such, he dropped the remaining Section 1983 claim as

well as his civil RICO claims in his Second Amended Complaint; in short, no Section 1983 or 1985

claims are part of "Plaintiff's remaining claims."  *See, e.g., Sullivan,* 773 F.2d at 1189; *EEOC v.*

*Reichold Chemicals, Inc*., 988 F.2d 1564, 1568-1569 (11th Cir. 1993).  Judge DuBose then ruled

on the propriety of Plaintiff's amendments as follows.  "[P]laintiff's argument in favor of a further

wholesale amendment is nothing more than a tacit acknowledgment that he will lose on the current

set of claims[,]" and that his "bare request" that he "be allowed, yet again, to avoid an adverse ruling

by the expedient of recasting his claims [which he had previously dismissed in response to

defendant's arguments] is insufficient to demonstrate that justice requires that the amendment be granted."  (Doc. 67 at 6-7).  Judge DuBose ruled further, that: "Plaintiff's wholesale amendment of the complaint in effect operated as a voluntary dismissal of his prior claims. *See* Fed.R.Civ. P. 41(a).  Were the court to allow plaintiff to re-plead these claims, it would be appropriate to tax plaintiff with attorneys' fees for defendant. *See* Fed.R.Civ.P. 41(d)." (Doc. 67 at 7, n. 5).[14]  Clearly then, Plaintiff dropped (and "dismissed") his Section 1983 and 1985 claims through the filing of amendments to his Original Complaint, in favor of pursuing other federal claims.[15]  In sum, while Plaintiff did not file a Rule 41(a) Voluntary Dismissal, the operative effect of his wholesale amendments to the Original Complaint and First Amended Complaint -- through which he dropped *ALL* of his civil rights claims -- was that of voluntarily dismissing those claims.  The "specific and unique context of [this] individual case[,]" thus reveal circumstances and proof which support a finding that Defendants are, in fact, prevailing parties.  *See, e.g., Dean*, 240 F.3d at 511; *Anthony v. Marion County General Hosp.*, 617 F.2d 1164, 1168-1170 (5th Cir. 1980) (concluding that a defendant was a prevailing party under Section 1988 where a plaintiff's discrimination action was

---

[14]*See generally Ryan v. Occidental Petroleum Corp.,* 577 F.2d 298, 302 n. 2 (5th Cir.1978) (noting that "Rule 41(a) speaks of dismissal of an action, and the plaintiff's elimination of a fragment of an action . . . is more appropriately considered to be an amendment to the complaint under Rule 15[]"); *AeroTech*, 110 F.3d at 1526 (adopting magistrate judge's conclusion that "plaintiffs' request to amend their complaint under Rule 15 [should be treated] as a motion for voluntary dismissal governed by Rule 41(a)(2)"); 8 *Moore's Federal Practice* § 41.21[2] (stating that "[i]n many instances the ... effect of[ ] an amendment will be the same as a voluntary dismissal ...."). In other words, when a plaintiff "seeks the equivalent of a voluntary dismissal through some other procedural device, the court may treat the application as if made under Rule 41(a)(2). " *Moore*, § 41.40[4][a]. Accordingly, Plaintiff's amendments were properly construed as a voluntary dismissal of his civil rights claims under Rule 41.

[15]The undersigned notes that Plaintiff has conceded that his counsel made "excessive" (i.e., improper) revisions to the Original Complaint. (Doc. 87 at 43). Interestingly, though, Plaintiff asserts that his counsel's revisions "were due, in part, to an obsessive-compulsive behavior disorder" which is "now controlled by drug therapy." (*Id*.) To the undersigned, this argument actually supports the frivolous and meritless nature of the amendments themselves.

involuntarily dismissed with prejudice due to lack of prosecution).

Moreover, in light of *Dean*, 240 F.3d at 511, the undersigned considers whether Defendants have established that Plaintiff's suit was frivolous, unreasonable or without foundation.  For this analysis, district courts in the Eleventh Circuit are guided by the *Sullivan* frivolity factors.  Under the first prong of *Sullivan*, Plaintiff failed to establish a *prima facie* case against Defendants for Section 1983 and Section 1985 violations.[16]  A step-by-step *prima facie* analysis is not necessary here, however, because this Court has already ruled that Plaintiff amended his Original Complaint and First Amended Complaint, voluntarily eliminating these federal claims, in direct response to Defendants' motions to dismiss.  *See infra* Section I.  A.  As such, they are no longer before this Court for consideration.  In so ruling, although Judge DuBose did not specifically determine that Plaintiff failed to establish a *prima facie* case for his federal civil rights deprivation claims.  This concept, however, was the necessary import of her ruling, especially given her conclusions that: 1) Plaintiff's wholesale amendments constituted voluntary dismissals of said claims; and 2) Plaintiff's proposed Third Amended Complaint (which attempted to revive these civil rights claims) enumerated claims which "relate to or derive from" the State Court rulings, "appear to be subject to *Colorado River* abstention," and/or "on their face . . . are subject to dismissal on the grounds previously stated" either by the Court or by Defendants.  (Doc. 67).  *See, e.g. Head,* 62 F.3d at 356.  Likewise, the concept of voluntary dismissal was the necessary import of Plaintiff's continual

---

[16]In order to prevail in a § 1983 action, a plaintiff must show that he was deprived of a federal right by a person acting "under color of state law." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001). "Only in rare circumstances can a private party be viewed as a 'state actor' for § 1983 purposes." *Harvey v. Harvey,* 949 F.2d 1127, 1130 (11th Cir.1992).  A Section 1985 claim requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Brotherhood of Carpenters & Joiners of America, Local 610 v. Scott,* 463 U.S. 825, 835 (1983); *Childree v. UAP/GA AG Chem, Inc.,* 92 F.3d 1140, 1147 (11th Cir. 1996).

amendments to his Original Complaint, as through same, he abandoned his Section 1983 and 1985 claims to eventually write them out of his case. *Id*. Subsequently, the undersigned's review of the record reveals that Plaintiff did not submit evidence sufficient to support these claims and did not defend his federal claims in specific and responsive briefing to the Defendants' motions to dismiss; rather, he chose to simply drop the claims given Defendants' opposition. *See, e.g., Stewart v. Town of Zolfo Springs, Fla*., 1998 WL 776848 (M.D. Fla. Sept. 16, 1998). As to the second prong, there is no indication in the record that Defendants offered to settle this case. As to the third prong, there is no dispute that Plaintiff's Section 1983 and 1985 claims were dismissed prior to a full blown trial on the merits, and the entire case was subsequently decided on a dispositive motion in favor of Defendants. *See infra* Section I. Thus, this Court finds that the *Sullivan* factors support an award of fees to Defendants.

Further, Plaintiff's contention that this litigation was not prolonged or unnecessarily multiplied, has no merit. This Court has already ruled that Plaintiff engaged in dilatory tactics and has unduly prejudiced Defendants through his "moving target" approach. *See infra* Section I. In short, Plaintiff should not have filed or pursued these frivolous federal claims. And while a frivolity review must be made on a case-by-case basis, here, it is the frivolity of this particular case which gives rise to an award of attorneys' fees. *See infra* Section I. Thus, Plaintiff's federal claims were legally frivolous, and as a matter of law, Defendants are prevailing parties for purposes of an award of attorneys' fees pursuant to Section 1988, with regard to the Section 1983 and Section 1985 claims in the Original complaint and the Section 1983 claim contained in the First Amended Complaint.

    2)    <u>The Lodestar</u>

        a)    <u>Reasonable Hours</u>

The first component in calculating the lodestar is the reasonableness of the hours claimed based upon the amount of time and labor required. *See, e.g., Norman,* 836 F.2d 1292; *Johnson,* 488 F.2d 714. Here, Defendants claim 423 hours expended by five attorneys from two law firms. Plaintiff objects to the request as a whole, raising the issues of insufficient documentation and duplicative work. In keeping with the Eleventh Circuit's guidance in *ACLU v. Barnes*, 168 F.3d 423, 429 (11th Cir.1999), each task must be addressed specifically, by the fee applicant, for this Court to determine reasonableness. Defendants, however, have left this Court ill-equipped to do so.

Specifically, instead of providing itemized billing statements/records showing detailed task assignments, Defendants have only submitted two affidavits from two of the five attorneys handling the defense (Alan C. Christian, of the Johnston Adams law firm, and Joseph C. Sullivan, of the Hamilton Butler law firm). (Docs. 81, 82). This is so, even though Defendants previously represented to this Court that they were prepared to submit affidavits and other information in support of their fees request (Doc. 75), and the undersigned ordered Defendants to submit all pertinent information regarding attorneys fees that it wished the Court to consider (adding that "[t]hose affidavits and other information must clearly reflect the time requested to be compensated, the services performed, and the hourly rate requested[].)" (Doc. 79 at 1-2). In response, Defendants filed two affidavits and a motion for *in camera* review of documentation in support of same, raising the shield of the attorney-client privilege and/or work product doctrine for their billing records and invoices. (Docs. 83). This Court denied Defendants' motion in a sealed order (Doc. 86), and notified Defendants that any materials which had been submitted for *in camera* review would <u>not</u> be considered in its fees motion unless and until certain requirements were met.[17] However,

---

[17]Absent special circumstances, fee information (billing records, expense reports, etc.) is not protected by the attorney-client privilege. *See, e.g., O'Neal v. U.S.,* 258 F.3d 1265 (11th Cir. 2001).

Defendants -- apparently disregarding this ruling -- asserted that handwritten notes and itemized invoices had been submitted, which evidenced the allocation of work effort. (Doc. 95 at 14-15). To date, however, Defendants have failed to comply with this Court's Order and failed to file any additional documentation. Indeed, there are no such handwritten notes or itemized invoices before this Court.

As a result, this Court is left with two affidavits submitted by Alan C. Christian (of the Johnstone Adams law firm) and Joseph C. Sullivan, Jr. (of the Hamilton Butler law firm), from which to render a fees determination. (Docs. 81, 82). Defendants have also provided, "[a] chart compiling these hours and rates[,]" for the fees requested by the Johnstone Adams law firm, as an attachment to the Christian Affidavit, which is included in this determination. (Doc. 81). In the Affidavits, Defendants assert that: 1) Plaintiff's federal litigation is frivolous under the *Johnson* criteria; 2) the amount sought in attorneys' fees totals $85,797.21 ($68,530.00 in fees and $2,039.87 in expenses on behalf of the law firm of Johnstone Adams, plus $14,630.00 in fees and $597.34 in expenses on behalf of the law firm of Hamilton Butler) and is fair and reasonable; 3) counsel's hourly rates are fair and reasonable for commercial litigation in the Southern District of Alabama; and 4) the number of hours expended, 423 hours, is fair and reasonable. (Docs. 74, 75, 81 and 82). The Affidavits (and chart attached to Christian's Affidavit) then provide counsel's hourly rates and the number of hours expended in the "preparation" and "review" of pleadings, as follows:

1)    177.75 hours expended by the Johnston Adams law firm, totaling $37,606.25, in preparation of an itemized list of pleadings (Docs. 7-10, 21-22, 26, 30, 33, 35-37) and in reviewing certain pleadings (Docs. 1-5, 13-15, 19-20, 24, 27-29, 31-32) for Plaintiff's Section 1983 and Section 1985 claims;

2)    71.75 hours expended by the Johnston Adams law firm, totaling $15,226.25, in the preparation of an itemized list of pleadings (Docs.

30, 33, 35-36, 53, 59-62, 66) and in reviewing certain pleadings (Docs. 28-32, 37-52, 54-58, 63-70, 72) for Plaintiff's civil RICO and "other civil" claims;

3)    74.50 hours expended by the Johnston Adams law firm, totaling $15,697.50, in the preparation of an itemized list of pleadings (Docs. 30, 33, 35-37, 53, 59-62, 66) and in reviewing certain pleadings (Docs. 28, 29, 31-32, 38-52, 54-58, 63-65, 67-70, 72) for Plaintiff's federal criminal claims;

4)    53.8 hours expended by the Hamilton Butler law firm, with regard to Plaintiff's Section 1983 and Section 1985 claims, to "review and study . . . all filings by Plaintiff and research, assistance in preparation, drafting  and filing of all documents on behalf of Defendants[]"and 45.2 hours expended by the Hamilton Butler law firm, with regard to Plaintiff's civil RICO, "other civil" and federal criminal claims, to "respond[]" to same, totaling $14,580.00.

5)    the hourly rates of counsel include Alan C. Christian/$215 per hour, E. Russell March, III/$175 per hour, Faith A. Pate/$135 per hour, Joseph C. Sullivan, Jr./$200 per hour and Brian Pugh/$125 per hour;

6)    the law firm of Johnstone Adams incurred $2,039.87 in expenses; and

7)    the law firm of Hamilton Butler incurred $597.34 in expenses.

(Docs. 81, 82).  Despite bearing the burden of proving their entitlement to such fees, Defendants have failed to submit supporting documentation for these Affidavits.[18]  This deficiency is especially problematic because Defendants acknowledge that they are only entitled to recover fees incurred for defending the claims for which they resulted in being prevailing parties (*i.e.*, Plaintiff's Section 1983 and Section 1985 claims).[19]

―――――――――――――

[18]Local Rule 54.3(c) provides that "the movant shall file and serve a detailed specification and itemization of the requested award, with appropriate affidavits and supporting documentation."

[19]Defendants acknowledge that "[b]ecause Plaintiff has liability only under . . . 1988 and Rule 11 .. . while Ellison [Plaintiff's counsel] has liability for all attorneys' fees under [Section] 1927 and Rule 11, the time and labor involved must, of necessity, be allocated to [Section] 1988 liabilities and other liabilities."  (Docs. 81, 82 at 2).

As determined *infra*, Defendants are prevailing parties as to Plaintiff's Section 1983 and Section 1985 claims, and Defendants have conceded that Section 1988 attorneys' fees are only awardable with regard to the fees they incurred in defending these claims in the Original Complaint and the Section 1983 claim in the First Amended Complaint. (Doc. 75 at 8-9). As such, the fees sought for Plaintiff's civil RICO, "other civil" claims and federal criminal claims are not recoverable. Here, in addition to seeking recovery of fees for the Section 1983 and Section 1985 claims, the law firm of Johnston Adams seeks recovery of 146.25 hours totaling $30,923.75 for other claims, as follows: 71.75 hours expended (totaling $15,226.25), for the preparation and review of pleadings relating Plaintiff's civil RICO and "other civil" claims; and 74.50 hours expended (totaling $15,697.50), for the preparation and review of Plaintiff's federal criminal claims. (Doc. 81). Similarly, the law firm of Hamilton Butler seeks additional recovery for 45.2 hours expended to "review and study . . . all filings by Plaintiff and research, assistance in preparation, drafting and filing of all documents on behalf of Defendants" relating to Plaintiff's civil RICO, "other civil" and federal criminal claims. (Doc. 82). However, Hamilton Butler requests a collective total of $14,580.00 for the work expended on all claims, without differentiation, and moreover, fails to distinguish between which attorney, of the two, worked on which claims, when, and at what hourly rate.[20] For those reasons stated *infra*, counsel is not entitled to recovery of fees unrelated to

---

[20]While the law firm of Johnston Adams provided a Chart in support of the Christian Affidavit, which separates the number of hours expended by each attorney at that firm for work on different claims, the law firm of Hamilton Butler has not provided any such chart in support of Sullivan's Affidavit. Additionally, Sullivan's Affidavit does not even differentiate as to which attorney, from the Hamilton Butler law firm, performed what tasks relative to which pleadings, during the 99 hours of work expended (totaling $14,580.00). (Doc. 82). The most that the Sullivan Affidavit provides, is that Sullivan expended 29.4 hours at the hourly rate of $200.00, and his fellow counsel, Brian Pugh, expended 69.60 hours at the hourly rate of $125.00, during which 53.8 hours were spent working on Plaintiff's Section 1983 and Section 1985 claims and 45.2 hours were spent working on Plaintiff's civil RICO, "other civil" and federal criminal claims. (*Id*.) As such, the undersigned cannot discern which attorney worked on

Plaintiff's dismissal of the Section 1983 and 1985 claims.

Additionally, the Christian Affidavit simply provides information as to the number of hours spent by each attorney at the Johnstone Adams law firm for "preparing" or "reviewing" materials for the Section 1983 or 1985 claims, civil RICO, "other civil" and federal criminal claims.[21]  In so doing, counsel has failed to provide a detailed description of the time and labor required by each attorney for each pleading or for any other related work and failed to submit contemporaneous invoices or time records to support same (*i.e.*, there are no detailed timesheets stating time allocated to, for example, court appearances, preparing/attending depositions, drafting/reviewing correspondence, legal research, preparing pleadings, conferencing with clients or opposing counsel, reviewing transcripts/pleadings, telephone calls, etc.).  Despite bearing the burden of proving their entitlement to such fees, Defendants have failed to sufficiently itemize their bills to support the award sought.  Namely, counsel does not identify the specific attorney work effort directly related to specific claims in each of the listed pleadings, and nowhere has counsel provided a traditional breakdown of their bill.  Also, absent are the dates of their work such that it is impossible for this Court to discern the distinct contribution of each lawyer for each task, to better understand precisely what work was performed at what time, by which attorney, on what date, and/or how long they performed each task.  Thus, what is clear from the Christian Affidavit and chart, is that there is no

---

which claims, what specific tasks were performed, for how long and/or on what date.

[21]Defendants seek attorneys' fees for time expended "reviewing" certain documents; however, Defendants do not specify what number of hours were spent reviewing these documents and inadequately specify the "review" time itself.  This further supports a curtailment of fees.  *See, e.g., Dillard v. City of Foley,* 995 F. Supp. 1358 (M.D. Ala. 1998) (suggesting that for "review" time to be recoverable, there need to be specific time entries and each time entry should identify the document in question and the review time may be awarded if it was performed in response to specific requests by counsel).

detailed itemization of the sort traditionally associated with fee requests.[22]  The same holds true for

the Sullivan Affidavit.

In short, this Court cannot discern which attorneys worked on which issues related to which

particular claims in which documents and/or when such work occurred.  This lack of detail opens

the door to denial of Defendants' motion.  *See, e.g., NAACP,* 812 F.2d at 1337-1337 (finding that

plaintiff's affidavit was too ambiguous and remanding the case so that plaintiff could supplement

its insufficient affidavits); *King II,* 707 F.2d at 468.  As such, while it is apparent that effort has been

put forward to defend this case, it is difficult to determine from the information before this Court,

exactly what was done, who did it, how long it may have taken and whether particular tasks were

related to Plaintiff's dismissal of his Section 1983 and 1985 claims. [23]

Moreover, what is evident from the Christian Affidavit, is that rather than shift much of the

_____

[22]The undersigned's review of the record also reveals that this is not the first instance in which Defendants have sought attorneys' fees in this case without providing adequate documentation.  For example, Defendants filed two other motion for fees on November 28, 2005 (Doc. 11) and, on March 2, 2006 (Doc. 34), without providing any affidavits or documentation in support of same.  Defendants, instead, relied upon the State Court orders, with regard to fees awarded in those proceedings, filing same as exhibits.  However, an attorneys fees award in the State Court based upon actions taken during those proceedings has no relevance here.

[23]*See, e.g., McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund,* 450 F.3d 91 (2d Cir. 2006) (holding that a prevailing party's fee application must be supported by contemporaneous time records, affidavits and other materials, and that in the ERISA case, the district court properly reduced the hours expended by 35%); *Role Models America, Inc. v. Brownlee,* 353 F.3d 962 (D.C. Cir. 2004) (holding that in light of inadequate time records in an EAJA case, the failure to adequately justify the number of hours sought, inconsistencies with time records and improper billing entries, it would only allow for a 50% reimbursement of the hours sought as a fixed reduction*); Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.,* 331 F.3d 472 (5th Cir. 2003) (concluding that the lack of any time records of the attorneys or documentation reflecting the rates charged or the billable hours spent in preparing for and litigation the case rendered the record completely devoid of even basic information); *Louisiana Power & Light Co. v. Kellstrom,* 50 F.3d 319 (5th Cir. 1995) (eliminating all the hours claimed by an attorney for whom there was no supporting documentation).  *See also Sun Valley Potato Growers, Inc. v. Texas Refinery Corp.,* 86 P.3d 475 (Idaho 2004) (reversing a lower court's award of statutory attorneys' fees to the prevailing party holding that while the party was entitled to fees, its refusal to submit time sheets on privilege grounds prevented the lower court from properly determining the amount of the award and foreclosed same).

Case 1:05-cv-00544-KD-C   Document 107   Filed 11/08/07   Page 33 of 52

work to the more junior attorneys on the case – and thus help hold fees in check – the most senior attorney on the case -- Alan C. Christian -- who bills at the highest hourly rate ($215/hour), actually billed the most hours in this case.  Indeed, Christian personally billed 170 hours out of the 177.75 hours billed by his firm, Johnstone Adams, with regard to Plaintiff's Section 1983 and Section 1985 claims.[24]

Further, compounding the problems, is the fact that since more than one attorney is involved -- here, five attorneys from two different law firms -- the lack of information on time spent at each activity enumerated precludes scrutinization of any potential duplicity of work efforts.  As a result, the most that can be discerned from the Affidavits and chart, is that different attorneys spent a differing number of hours "working" on the different claims (by "preparing" and "reviewing" documents) at some point during this litigation. In this regard, the undersigned finds significant Hamilton Butler's admission that "Mr. Christian took the laboring oar with respect to most of the preparation of documents submitted by Defendants[,]" whereas "Mr. Sullivan and his firm were [instead only] required . . . to review the multitude of pleadings and other documents submitted" by Plaintiff and his counsel and "approve the content of the joint defense briefs as well as provide insight and input as to the legal issues involved." (Doc. 95 at 14).  As noted in *Johnson*, reduction is warranted if attorneys are unreasonably doing the same work.  *Johnson*, 488 F.3d at 717. Additionally, for an award for time spent by two or more attorneys to be proper, it must reflect the distinct contribution of each attorney to the case.  *Dowdell*, 698 F.2d at 1188.  Here, given Hamilton Butler's concession, counsel with that firm cannot now, attempt to "unring the bell," of duplicity by

_____

[24]Likewise, Christian personally billed 69.25 of the 71.75 hours billed by his firm, relating to Plaintiff's civil RICO and "other civil" claims; and personally billed 66.50 of the 74.50 hours billed by his firm, relating to Plaintiff's federal criminal claims.  (Doc. 81).

claiming entitlement to attorneys' fees – particularly where their documentation is insufficient. *See*, *e.g., Kurz v. Chase Manhattan Bank, USA*, 324 F. Supp. 2d 444, 447 (S.D.N.Y. 2004).

Furthermore, Defendants did not follow this Court's instructions. As noted *infra*, Defendants invoked the attorney-client privilege and/or work product doctrine as a shield to this Court's review of their billing records/invoices. As such, it is by Defendants own hands that their fees motion is deficient. Defendants "may not assert entitlement to a monetary benefit on the one hand, and then hide behind a claim of privilege on the other" *O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001). "Indeed it is the law of this circuit that information involving receipt of attorneys' fees from a client is not generally privileged." *Id.* It is doubtful that the substantiation of legal fees in this case would reveal confidential information, and Defendants have not provided this Court evidence to the contrary. Without such substantiation, however, the fees motion is insufficient.

        b)    <u>Reasonable Hourly Rate</u>

The next component in calculating the lodestar is the "reasonable hourly rate" for work performed by similarly situated attorneys in the community. Defense counsel request an award for hourly rates as follows: Alan C. Christian ($215.00); E. Russell March, III ($175.00); Faith A. Pate ($135.00); Joseph C. Sullivan, Jr. ($200.00); and Brian Pugh ($125.00). (*Id.*) "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299; *Blum,* 465 U.S. at 895 and n. 11; *ACLU* , 168 F.3d at 436-437; *Dillard,* 213 F.3d at 1354-1355. A fee applicant may provide opinion evidence of reasonable rates by submitting affidavits of other attorneys in the relevant legal community. *Duckworth v. Whisenant*, 97 F.3d 1393, 1396-1397 (11th Cir.1996). The Court may also utilize its own personal experiences and expertise to assess the lawyering skills

exhibited during the pendency of the case, *see id.,* but cannot simply substitute its own judgment for uncontradicted evidence without an explanation and support in the record. *NAACP,* 812 F.2d at 1334, 1336. Additionally, in determining a reasonable hourly rate, the Eleventh Circuit has provided a list of factors for consideration. *Johnson*, 488 F.2d at 717-719. The Supreme Court has stated that these factors usually are subsumed in the lodestar calculation. *Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 565 (1986). *See, e.g., Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1340 & n. 7 (11th Cir. 1999); *Norman*, 836 F.2d at 1299; *NAACP*, 812 F.2d at 1336-1337.

Here, while none of the hourly rates submitted by counsel appear to be unreasonable, this Court, in its review of the 12 *Johnson* factors against the two affidavits (Docs. 81, 82), finds that an averaging of counsel's rates is appropriate. This is, in part, due to the insufficient documentation provided to this Court. *See, e.g., Western Surety Co. v. Bradford Electric Co., Inc*., 483 F. Supp. 2d 1114, 1123 and n.10 (N.D. Ala. 2007) (averaging the hourly rates charged by counsel, where two attorneys billed at $200 per hour and a third at $185 per hour, because the attorneys improperly "grouped" their hours, "creating difficulties in determining the reasonableness of all charges[,]" and by "listing numerous activities in blocks, the court cannot ascertain with specificity how much . .. time was actually spent" preparing certain pleadings). Indeed, while counsel assert that the results obtained were dismissal, that they bill by an hourly rate, that they have represented Defendants for over 6 years in the State Court and federal litigation, that the litigation was undesirable, and attest to their years of experience, other information is lacking. (Docs. 81, 82). *See, e.g., Johnson*, 488 F.2d at 717-719). Neither counsel have submitted evidence of rates actually billed and paid in other cases in this district. *Id.* Neither counsel have sufficiently detailed the time and labor required. *Id.* Counsel admit the issues of preclusion of other employment and time limitations, are not applicable.

35

*Id.* Counsel assert that the fee customarily charged in defending commercial litigation is an hourly rate, but neither counsel provide information as to awards in similar cases. *Id.* Also, counsel claim the issues are novel and difficult, yet attest to their frivolity. *Id.* Moreover, a reduction is proper due to the lack of supporting documentation and Hamilton Butler's statement that Mr. Christian carried "the laboring oar" of the workload. (Doc. 95 at 14).

As such, this Court will average the rates of all five attorneys, such that any award will be calculated at the rate of $170.00 per hour.

 3) <u>Adjustments</u>

While inclined to award Section 1988 attorneys' fees in light of Defendants' prevailing party status and due to Plaintiff's dilatory actions (which have already been found to have unduly prejudiced Defendants), the undersigned finds it inappropriate to award the entire amount sought based upon the present record. Defendants have tied this Court's hands by failing to provide sufficient supporting documentation through their invocation of privilege, almost resulting in an outright denial of their motion.[25] Nevertheless, this Court finds that Eleventh Circuit case law provides an avenue for recovery for Defendants because "[f]or decades the law in this circuit has been that '[t]he court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.'" *Norman,* 836 F.2d at 1303. Accordingly, "where the time or fees claimed seem expanded or there is a lack of

---

[25]*Cf. King v. McCord*, 621 F.2d 205, 206 (5th Cir. 1980) (holding that the district court, in making an attorneys' fee award pursuant to plaintiff's successful Equal Pay Act and 29 U.S.C. § 216(b) claim, was improper, because no hearing was held, the application for fees did not contain sufficient detail, and the decision lacked sufficient clarity to enable an appellate court to intelligently review the award (e.g. no discussion of *Johnson* criteria), thus vacating the award). *See also e.g., Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1473 (11th Cir. 1984).

documentation or testimonial support the [appellate] court may make the award on its own experience." *Id.*   Here, the appropriate avenue for recovery for Defendants is an overall fee reduction.[26]  Specifically, for all those reasons detailed *infra* Section II.B.1.b.(2)(a-b), the Affidavits submitted in support of Defendants' fee motion are deficient and merit adjustments to the amount of attorneys' fees sought in this case.  This reduction will be enacted as follows.  First, all hours have been reduced to an average of all five attorneys' hourly rates.  Second, any fees sought for work unrelated to Plaintiff's Section 1983 and Section 1985 claims are not awardable, and as such, any award issued to Johnstone Adams will be reduced by 146.25 hours, totaling $30,923.75, for that unrelated work.  As for Hamilton Butler, there is no indication in the Sullivan Affidavit as to what portion of that law firm's work was unrelated to Plaintiff's Section 1983 and Section 1985 claims; rather, while assigning a different number of hours to the two attorneys for handling all the claims, the firm simply lumps all claims together in one total monetary sum of $14,580.00.  Thus, presuming that one-half of the times was spent on these claims, given how counsel has presented their

---

[26]*See, e.g., Hensley*, 461 U.S. at 433-434; *Western Surety Co. v. Bradford Electric Co., Inc.*, 483 F. Supp. 2d 1114, 1123 (N.D. Ala. 2007) (allowing for reductions in time for various activities, including reductions of 1/3 of the time billed); *ACLU*, 168 F.3d at 428 (cutting fee award due to insufficient documentation but finding fees appropriate); *Baker*, 2000 WL 284215*; U.S. v. Adkinson*, 256 F. Supp. 2d 1297 (S.D. Fla. 2003) (reducing the amount of hours billed by 20% due to their excessive nature); *Villano v. City of Boynton Beach*, 254 F.3d 1302 (11th Cir. 2001) (holding that a magistrate judge's across the board reduction in fees of 25%, due to insufficient documentation, was proper); *Jean*, 863 F.2d at 772-777 (discussing the reasonableness of the hours expended in light of the contention that the fee requests were not supported by sufficient documentation and involved duplication of efforts). *See also Alameda Films SA de CV v. Authors Rights Restoration Corp, Inc.*, 331 F.3d 472 (5th Cir. 2003) (concluding that the lack of any time records or documentation reflecting the billable hours spent rendered the record "completely devoid of even the basic information needed"); *Role Models America, Inc. v. Brownlee*, 353 F.3d 962 (D.C. Cir. 2004) (holding that in light of inadequate time records submitted, the failure to adequately justify the number of hours sought and inconsistences in time records, it would allow reimbursement for only 50% of the attorney hours sought, stating that a fixed reduction was appropriate); *Farfaras v. Citizens Bank and Trust of Chicago*, 433 F.3d 558 (7th Cir. 2006) (finding that court properly reduced attorney's fees in light of block billing and vague descriptions which failed to comply with local rule regarding the submission of billing records with fee petitions).

Affidavit, the hours sought by Hamilton Butler will be reduced by 50%. Third, given Hamilton Butler's concession that Alan C. Christian "carried the laboring oar" in this case, rather than their law firm, the hours sought by that law firm will be further reduced by 10%. *See infra.* Fourth, due to the insufficient documentation in support of Sullivan's Affidavit, Hamilton Butler's hours will be reduced further, by 15%; and likewise, due to the insufficient documentation in support of Christian's Affidavit, the Johnstone Adams' hours will also be reduced by 15%.

4)      Expenses

Defendants, through affidavits submitted by their counsel, seek an award of "necessary and reasonable" expenses totaling **$2,637.21.** (Docs. 81, 82). A prevailing party in a civil rights action is normally allowed recovery of fees under Section 1988, *Hensley,* 461 U.S. at 437, and "[w]ith the exception of routine overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case, may be taxed as costs under § 1988. *Barnes,* 168 F.3d at 438 (holding, in part, that the district court abused its discretion by not excluding certain expenses). *See also e.g., Wyatt v. Sawyer,* 67 F. Supp. 2d 1331, 1355-1356 (M.D. Ala. 1999); *Loranger v. Stierheim*, 3 F.3d 356, 363 (11th Cir.1993); *NAACP.,* 812 F.2d at 1337; *Dowdell,* 698 F.2d at 1190-1192 (holding that reasonable litigation expenses are ordinarily included in an award of a statutory attorneys' fee); *Steiner v. Hercules, Inc.,* 835 F. Supp. 771, 793 (D. Del.1993) (denying expenses where a firm did not provide documentation identifying individual expenses or services or a billing rate for the items). The Eleventh Circuit has directed that "the standard of reasonableness is to be given a liberal interpretation." *Dowdell,* 698 F.2d at 1192; *accord NAACP,* 812 F.2d at 1337. In applying this standard, courts in this Circuit uniformly have allowed recovery of expenses such as photocopying, postage, long distance phone

38

calls, necessary travel, and on-line research. *Cullens v. Georgia Dept. of Transp.,* 29 F.3d 1489, 1494 (11th Cir.1994); *Dowdell,* 698 F.2d at 1190-1192.

Here, however, Defendants have not only failed to provide any documentation to support their expenses, but also failed to provide even a cursory description, in the relevant affidavits, identifying just what their claimed expenses entail (*i.e.,* phone or fax expenses, copying expenses, deposition transcripts, etc.). This is true, even though Defendants were given the opportunity, pursuant to Court Order, to do just that.[27]  (Doc. 86) (sealed).  Rather, Defendants rely exclusively upon two affidavits, (Docs. 81, 82), which simply state the amount of expenses sought and assert that they were "necessary and reasonable."  These statements lack the particularity that would allow this Court to determine precisely what expenses are sought, as well as lack any detail from which this Court could determine whether they were necessarily and reasonably incurred.  In short, there is no evidentiary support in the record for Defendants' claim that counsel incurred the amount of expenses requested, and without adequate documentation describing the legal work for which the fees or expenses were incurred, it is impossible to verify reasonableness or necessity.  *See, e.g., In re Madison Guaranty Savings & Loan,* 389 F.3d 1298, 1303 (C.A.D.C. 2004) (citing to *In re Sealed Case,* 890 F.2d 451, 455 (D.C. Cir. Spec. Div. 1989)).  In those cases where little or no evidentiary support is provided for the expenses requested, as is the case here, courts may reduce or deny the expenses.[28]  *Id.* Thus, while this Court recognizes that the Eleventh Circuit traditionally takes a

---

[27]As with their billing records/invoices, Defendants filed a motion for *in camera* review relevant to this documentation, citing the attorney client privilege.  Absent special circumstances, fee information (billing records, expense reports, etc.) is not protected by the privilege.  *See, e.g., O'Neal v. U.S.,* 258 F.3d 1265 (11th Cir. 2001).

[28]*See also Hensley,* 461 U.S. at 433; *Wales v. Jack M. Berry, Inc.,* 192 F. Supp. 2d 1313, 1330 (M.D. Fla. 2001) (providing that, "[a]s with an attorneys' fee, expense requests unaccompanied by adequate supporting documentation will result in a reduction or elimination of the expense[]").  *See also*

liberal approach when reimbursing attorney expenses, Defendants still bear the burden of submitting a request that will enable a court to determine what expenses were incurred and whether they are entitled to them.  *See, e.g., Barnes*, 168 F.3d at 438-439 (holding that a district court abused its discretion in not excluding unnecessary expenses).  Defendants' requested expenses are "wholly devoid" of any such explanation, and thus, they have failed to meet their burden here.  Therefore, the undersigned recommends that Defendants' expenses be **DENIED**.

     5)    <u>Attorneys' Fees Summary Table</u>

The Eleventh Circuit has stated that a court granting an award of attorneys' fees should provide a summary table detailing its calculation of the attorneys' fees and expenses awarded.  *See, e.g., Coastal Fuels,* 207 F.3d at 1252; *Barnes,* 168 F.3d at 439. Accordingly, applying the foregoing reductions, this Court provides the following summary table for this case:

| **Attorneys' Fees Sought:** | **Attorneys' Fees Awarded** |
|---|---|
| Johnston Adams Law Firm | |
| Alan C. Christian (170.00 hours/$215)-$65,306.25 | $24,565.00 (144.50 hours/$170) |
| E. Russell March, III (0.25 hours/$175)-$1,443.75 | $37.40 (.022 hours/$170) |
| Faith A. Pate (7.50 hours/$135)-$1,350.00 | $1,082.90 (6.37 hours/$170) |
| Hamilton Butler Law Firm | |
| Joseph C. Sullivan, Jr. (29.4 hours/$200)-$5,880.00 | $1,249.50 (7.35 hours/$170) |
| Brian Pugh (69.60 hours/$125)-$8,700.00 | $2,958.00 (17.40 hours/$170) |

_____

*Sub Total:*                                                  *$29,892.80*

---

*Jan R. Smith Construction Co. v. Dekalb County*, 18 F. Supp. 2d  1365, 1367 (N.D. Ga. 1998); *Lee v. American Eagle Airlines*, 93 F. Supp. 2d 1322, 1335-1336 (S.D. Fla. 2000).

| Expenses Sought | Expenses Awarded |
|---|---|
| Johnston Adams Law Firm–$2,039.87 | $0.00 |
| Hamilton Butler Law Firm–$597.34 | $0.00 |
| | |
| *Sub Total:* | *$0.00* |
| **TOTAL AWARD:** | **$29,892.80** |

Thus, the total attorneys' fee due to be awarded, in favor of Defendants and against Plaintiff, pursuant to Section 1988, totals **$29,892.80**.

### 2.   Section 1927 Fees Against Plaintiff's Counsel

### a.   Relevant Law

Pursuant to Section 1927, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *See, e..g., Cordoba*, 419 F.3d 1169; *Boler v. Space Gateway Support Co.*, LLC, 290 F. Supp.2d 1272 (M.D. Fla. 2003). The word "vexatious"[29] is not defined in the statute and in such circumstances, courts typically read statutory terms to convey their ordinary meaning. *See e.g., Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources*, 532 U.S. 598 (2001). There is little case law in the Eleventh Circuit articulating the standard applicable to an award of attorney's fees under § 1927. *Peterson v. BMI Refractories,* 124 F.3d 1386, 1395 (11th Cir. 1997). The Eleventh Circuit has not specifically required a finding of subjective bad faith; rather, it has stated

---

[29]BLACK'S LAW DICTIONARY defines "vexatious" to mean "without reasonable or probable cause or excuse; harassing; annoying." *See, e.g., Boler*, 290 F. Supp. 2d at 1276.

41

that Section 1927 allows district courts to assess attorneys' fees against counsel and law firms who willfully abuse the judicial process by "conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). An attorney's negligent conduct does not support an award of sanctions under Section 1927. *See, e.g., Amlong & Amlong, P.A. v. Denny's, Inc.,* 457 F.3d 1180, 1193 (11th Cir. 2006). "[A]n attorney's conduct must be particularly egregious to warrant the imposition of sanctions-the attorney must knowingly or recklessly pursue a frivolous claim or needlessly obstruct the litigation of a non-frivolous claim." *Id.* The Eleventh Circuit has agreed that "[a] finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). The Eleventh Circuit has noted as well, that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest." *Avirgan*, 932 F.2d at 1582.

The purpose of § 1927 is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *O'Rear v. American Family Life Assurance Co. of Columbus, Inc.,* 144 F.R.D. 410, 413 (M.D. Fla.1992). In this sense, Section 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants . . . It is concerned only with limiting the abuse of court processes." *Roadway Express,* 447 U.S. at 762. *See, e.g., Macort v. Prem, Inc*., 208 Fed. Appx. 781, 785-786 (11th Cir. 2006); *Amlong.,* 457 F.3d at 1190.

The plain language of the statute imposes three requirements for an award of sanctions under Section 1927: 1) the attorney must engage in "unreasonable and vexatious" conduct; 2) that "unreasonable and vexatious" conduct must be conduct that multiplies the proceedings; and 3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings (the sanction

42

may not exceed the costs, expenses, and attorneys' fees reasonably incurred because of such conduct). *Peterson*, 124 F.3d at 1396.  In order for Section 1927 to apply, there must be a causal connection between the objectionable conduct of counsel and multiplication of the proceedings, as objectionable conduct – even unreasonable and vexatious conduct – is not sanctionable unless it results in proceedings that would not have been conducted otherwise.  *Id.*

      **b.**    <u>**Application**</u>

Defendants assert that they are entitled to approximately $20,000.00 in Section 1927 fees against Plaintiff and/or Plaintiff's counsel, Willie James Ellison ("Ellison").  Defendants are correct that this Court has the power to sanction Plaintiff's counsel pursuant to Section 1927, and should do so in this case.  As noted *infra*, the undersigned has already determined that attorneys' fees are appropriate under Section 1988, and as such, Section 1927 fees are allowable.  As to those actions meriting Section 1927 claims, however, the standard for conduct tantamount to bad faith is higher than that of mere frivolousness.  So in assessing whether the conduct of Plaintiff's counsel is tantamount to bad faith, this Court focuses on his conduct and motives, and not the validity of the case alone.  *See, e.g., Bolero*, 290 F. Supp.2d at 1285.

Here, the record reveals that the Original and First Amended complaints, were frivolously filed.  *See infra*.  Indeed, the Original Complaint was due to be dismissed and the First (and Second) Amended complaints were simply attempts to salvage the federal litigation from dismissal.  Likewise, the history of this litigation reveals that Plaintiff's counsel filed numerous frivolous and meritless motions and other papers including: the motion for a hearing on claims one and two (Doc. 13); motion for order to show cause (Doc. 19); motion for a hearing (Doc. 20); motion for sanctions (Docs. 31, 39); motion for expungement (Doc. 41); motion for sanctions (Doc. 42); motion for

"churning" the federal litigation (Doc. 43); and motion for leave to file motion to realign (Doc. 57). And notably, many of these motions were filed *after* this Court ordered the parties to refrain from filing any more pleadings.  (Doc. 38).  Although Plaintiff's counsel *might* have had a good faith basis in law and fact for filing *some* of Plaintiffs' claims, initially, it became quite clear, very soon after the Complaint was filed, that his claims were frivolous.  Plaintiff's claims appear to be an attempt to simply re-litigate the issues surrounding the State Court litigation in this Court.  Hence, Defendants commencement of filing motions to dismiss.  And Plaintiff's numerous amendments, on the heels of these motions to dismiss, evidence his recasting of his claims in order to avoid an adverse ruling on the merits.  Significantly, this Court has already concluded as much.  (Doc. 67).

Additionally, while a lack of merit, alone, is not enough to trigger Section 1927 sanctions, *see, e.g., McMahan*, 256 F.3d at 1129, the Eleventh Circuit has stated that a court may assess attorney's fees against counsel and law firms who willfully abuse the judicial process by conduct tantamount to bad faith  *See infra*.  As noted *infra* Section I, his Court has already ruled that Plaintiff's repeated amendments to his Original complaint exhibited "dilatory motive" and a "moving target" approach to this federal litigation, "interfered with this Court's interest" in addressing the merits of his claims and rendering a final determination, and "wasted" this Court's time.  This indicates bad faith and vexatious behavior and suggests as well, that counsel's pleading style was intended to harass Defendants or delay/disrupt the federal litigation. Counsel has shown a willingness to abuse the judicial process by continuing to file amended complaints on behalf of Plaintiff, in response to Defendants' motions to dismiss.  Even though it should be apparent to counsel that Plaintiff's Section 1983 and 1985 claims were ruled to have been dismissed by this Court, counsel endeavored to file a Third Amended Complaint on behalf of Plaintiff, to reassert

certain civil rights claims.  Moreover, as already noted, the civil rights claims stem from the actions

in the State Court proceedings (which have been conducted for approximately six years) and all

discovery related to said actions has been long completed. As such, this is not a situation where

counsel may have initially asserted federal claims that discovery failed to bear out; rather, this is a

situation where counsel, with full knowledge of the State Court proceedings, asserted frivolous

federal claims and even after this Court dismissed his entire case and found "dilatory motives" and

"wasting" of resources were prevalent in the litigation, Plaintiff has tried to revive said claims.

Further, there is evidence in the record that the fees incurred by Defendants, were incurred as a

result of having to file numerous responsive motions to Plaintiff's ever-changing case and therefore,

the requirements of Section 1927 has been satisfied.  *See infra.* Thus, Defendants' motion for

Section 1927 fees is due to be **GRANTED** such that Plaintiff's counsel[30] is due to pay Defendants

**$10,000.00.**

### 3.        The "Bad Faith" Standard & This Court's Inherent Powers

### a.        Relevant Law

"[D]eeply rooted in the common law tradition is the power of any court to manage its affairs

[which] necessarily includes the authority to impose reasonable and appropriate sanctions upon

errant lawyers practicing before it[]" and upon parties to litigation.  *Malautea v. Suzuki Motor Co.,*

*Ltd.*, 987 F.2d 1536, 1545 (11th Cir.), *cert. den.*, 510 U.S. 863 (1993); *Chambers,* 501 U.S. 32.  *See*

*also Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1209 (11th Cir. 1985) (noting that the

---

[30]In so doing, the undersigned declines to find Plaintiff liable as well, under Section 1927.
Defendants have cited *Strain v. Kaufman County District Attorney's Office,* 23 F. Supp. 2d 698 (N.D.
Tex. 1998), for this proposition and contend, based on that case, that Plaintiff's counsel should be held
jointly liable along with Plaintiff. (Doc. 75 at 16).  "Awards pursuant to Section 1927 may be imposed
only against the offending attorney; clients may not be saddled with such awards."  *See, e.g., Bryne v.
Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001).

inherent power of courts to manage its affairs necessarily includes the authority "to impose reasonable and appropriate sanctions upon errant lawyers practicing before it[]"). Because of their potent nature, however, "inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44; *Barnes*, 158 F.3d at 1214. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers,* 501 U.S. at 44-45.

One of the narrowly defined circumstances in which federal courts have inherent power to assess attorneys' fees against counsel is where a party and/or counsel has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id*. at 45-46. Courts may sanction a party or attorney who "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order." *Malautea*, 987 F.2d at 1545-1546. A finding of bad faith is warranted "where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent . . .[or] by delaying or disrupting the litigation or hampering enforcement of a court order." *Barnes*, 1998 WL 754553, *2.

**b.    Application**

Here, because this Court has held that Plaintiff's counsel should be held liable for attorneys' fees under Section 1927, this Court may also exercise its inherent power to impose additional sanctions. *See, e.g., Chambers*, 501 U.S. at 49; *Barnes v. Dalton*, 1998 WL 754553, *2 (11th Cir. 1998); *Mroz*, 65 F.3d at 1575-1576. That being said, this Court takes seriously a request for sanctions and is generally hesitate to impose them; however, they are warranted here. As discussed *infra*, Plaintiff's Section 1983 and 1985 claims lacked any merit; this case did not turn on subtle, unsettled issues of law nor did it involve close questions of facts. When it became apparent – very

46

early on in this case – that his claims were frivolous, rather than continuing to amend his Original Complaint, Plaintiff and his counsel should have discontinued their quest.  In failing to do so, Plaintiff's counsel breached his duty to discontinue the Plaintiff's civil rights deprivation claims and recklessly asserted frivolous arguments.  The constant amendments to the Original complaint, as a tool to avoid disfavorable ruling on the merits, reveal that many of Plaintiff's claims should never have been filed in the first place.  And Plaintiff's voluntary dismissal of its civil rights deprivation claims underscores this conclusion.  Moreover, this Court's ruling, that Plaintiff's Second Amended Complaint was due to be dismissed due to a lack of standing, only highlights the bad faith nature of this litigation.  The actions by Plaintiff and his counsel evidence recklessly raised federal claims and frivolous arguments, in order to delay and/or disrupt the federal proceedings.  Indeed, this Court has already ruled that Court resources were "wasted."  Every pleading filed by Plaintiff magnifies the bad faith and disruption evidenced in this case, but responsibility for pursuing the frivolous theories should not fall exclusively upon Plaintiff.  As such, an award under this Court's inherent power is warranted, against both Plaintiff and his counsel, because they appear to have been equally at fault for continuing to assert these claims and in continually changing their legal theories.

Having determined that the actions of Plaintiff and his counsel amount to bad faith sanctionable conduct, under the inherent powers of this Court, the undersigned focuses upon the nature of the sanctions that need to be imposed upon these individuals.  It this circuit, courts may exercise their inherent powers to disqualify counsel, impose a fine, assess attorneys' fees and costs and/or assess witness fees. *See, e.g., Kleiner*, 751 F.2d at 1209; *Chambers*, 501 U.S. at 40 at n.5; *Malautea*, 987 F.2d at 1546; *Peterson*, 124 F.3d at 1395 at n.5; *Barnes*, 1998 WL 754553, *3.  The sanction warranted in this case is imposition of a fine payable to the clerk of the court.  An

appropriate fine in this case is based upon the "willfulness and gravity of counsel's misconduct" and the misconduct of plaintiff Joseph Dzwonkowski, Sr., as heretofore set forth. *See Kleiner, supra,* 751 F.2d at 1210. Based upon this misconduct, the undersigned recommends that a fine be imposed, equally, against Plaintiff and Plaintiff's counsel, in the amount of **$10,000.00.** *See id.* ("'Unless severe sanctions are imposed . . . the deterrent function of sanctions will not be achieved.'").

### 4.    Rule 11 Fees

### a.    Relevant Law

Defendants contend that they are also due $100,000.00 in attorneys' fees against Plaintiff's counsel, pursuant to Rule 11 of the *Federal Rules of Civil Procedure*.  An attorney who presents to this Court any paper, motion or pleading, certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonably under the circumstances" that there is evidentiary support for any allegations or factual contentions.  *Fed.R.Civ.P.* 11(b)(3).  Rule 11 sanctions are proper when: 1) a party files a pleadings that has no reasonable factual basis; 2) when the party files a pleading that is based on a legal theory that has no reasonably change of success and that cannot be advanced as a reasonably argument to change existing law; and 3) when the party files a pleading in bad faith for an improper purpose.  *See, e.g., Bolero*, 290 F. Supp.2d at 1280.  *See also Riccard v. Prudential Ins. Co.,* 307 F.3d 1277, 1294 (11th Cir. 2002).  The obligations imposed by Rule 11 continue throughout the course of the litigation and sanctions can be imposed when a litigant continues to press a claim after learning that it ceases to have merit."  *Cargile v. Viacom Int'l, Inc.,* 282 F. Supp. 2d 1316, 1319 (N.D. Fla. 2003).[31]

---

[31]*See also Howard v. Liberty Memorial Hosp.,* 752 F. Supp. 1074, 1080 (S.D. Ga. 1990) (providing that "Rule 11 of the Federal Rules of Civil Procedure, as amended in 1983, requires attorneys to inquire about the facts and the law before filing pleadings. [] By requiring prefiling inquiries, the Rule is designed to '"reduce frivolous claims, defenses, or motions' and to deter "costly meritless maneuvers,"

In considering the propriety of Rule 11 sanctions, courts must first determine whether the party's claims are objectively frivolous, and then, if so, whether the person signing the pleading should have been aware that they were frivolous (whether he would have been made aware of same through a reasonable inquiry).  *See, e.g., Bolero*, 290 F. Supp.2d at 1280.  Relevant factors include: how much time was available for investigation; whether reliance on representations of the client was necessary; whether the paper was based upon a plausible view of the law; and the extent to which factual development requires discovery.  *Id.* Moreover, prior to filing a Rule 11 sanctions motion, the movant must serve a safe harbor notice on her opponent, and the failure to timely serve such notice makes such sanctions unavailable.[32] *Fed.R.Civ.P.* 11(a)(A).  *See, e.g., Torres v. City of Orlando,* 264 F. Supp. 2d 1046, 1053 n.18 (M.D. Fla.), *aff'd*,  88 Fed. Appx. 391 (11th Cir. 2003) (table).

b.    __Application__

Defendants' motion for Rule 11 sanctions is predicated on the actions of Plaintiff's counsel in this federal litigation – namely, that he may be liable for all attorneys' fees with respect to the Original complaint, First Amended Complaint and Second Amended Complaint as well as various motions and papers relating to same.  (Doc. 75 at 17-18).  A review of the record reveals that

---

thus avoiding unnecessary delay and expense in litigation.' [] In addition to inquiry, an attorney who submits a pleading must certify that: 'to the best of the [attorney's] knowledge, information, and belief formed after reasonable inquiry [the pleading] is well grounded in fact *and is warranted by existing law* or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose[]'").

[32]*Fed.R.Civ.P.* 11(c)(1)(A) provides that "[a] motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected."

Defendants Rule 11 sanctions request suffers from a critical procedural defect.  Namely, the safe harbor notice requirement was not met.  Indeed, while Defendants have raised the issue of Rule 11 sanctions from the filing of their first motion for sanctions in November 2005 through their most recent motion *(*Docs. 11, 30, 34, 74), at no time, have Defendants represented that they complied with, or submitted evidence demonstrating compliance with, Rule 11's safe harbor provision.  The evidence of record also fails to provide this information.  Thus, the undersigned recommends that Defendants' motion, with regard to Rule 11 sanctions, be **DENIED**.

## III.   <u>CONCLUSION</u>

Based on the foregoing, it is the recommendation of the undersigned Magistrate Judge that Plaintiff's Motion to Stay be **DENIED,** and that Defendants' Consolidated Motion for Attorneys' Fees and Other Sanctions be **DENIED in part** and **GRANTED in part**, such that Defendants recover an attorneys' fees and sanction award totaling **$39,892.80,** and further, that a fine in the amount of **$10,000.00** be imposed and paid to the Clerk of Court as follows:

1)   **$29,892.80** in attorneys' fees is due to be paid by Plaintiff to Defendants pursuant to Section 1988 ($25,685.30 to be awarded to the Johnstone Adams law firm and $4,207.50 to be awarded to the Hamilton Butler law firm);

2)   **$10,000.00** in attorneys' fees is due to be paid by Plaintiff's counsel to Defendants pursuant to Section 1927 ($8,600.00 to be awarded to the Johnstone Adams law firm and $1,400.00 to be awarded to the Hamilton Butler law firm);

3)   **$10,000.00** as a fine due to be paid by Plaintiff and Plaintiff's counsel (equally) to the Clerk of the Court pursuant to this Court's inherent power;

4)   **$0.00** in attorneys' fees pursuant to Rule 11; and

5)   The attorneys' fees and fine are to be paid not later than **December 3, 2007.**

The attached instructions contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 6th day of November, 2007.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.     *Objection*.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a  brief  setting  forth  the  party's  arguments  that  the  magistrate  judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

> A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.     *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE