**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JOSEPH DZWONKOWSKI, SR. :

      Plaintiff,         :

vs.                       :     CA 05-0544-KD-C

JOSEPH DZWONKOWSKI, JR., :
et al.,
                            :

      Defendants.

## <u>SUPPLEMENTAL REPORT AND RECOMMENDATION</u>

This cause is back before the undersigned for entry of a supplemental report and recommendation on the defendants' objections (Doc. 108; *see also* Doc. 109) to the Magistrate Judge's November 8, 2007 report and recommendation (Doc. 107), the plaintiff's objections to the report and recommendation (Doc. 112), the defendants' December 5, 2007 response (Doc. 113) to the undersigned's September 27, 2006 order (Doc. 86), the December 11, 2007 order of District Judge Kristi K. DuBose (Doc. 114), the undersigned's order of December 17, 2007 (Doc. 115), the defendants' December 28, 2007 notice of filing exhibits (Doc. 116), and the plaintiff's objections to the defendants' billing invoices (Doc. 117). Upon consideration

of the foregoing pleadings, the undersigned supplements the report and recommendation entered on November 8, 2007 (Doc. 107), pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c), as indicated below.

## DISCUSSION

The undersigned's November 8, 2007 report and recommendation (Doc. 107) remains as the primary report and recommendation in this case in relation to the defendants' consolidated motion for an award of attorneys' fees (Docs. 74 & 75). In this regard, this supplemental report and recommendation leaves as unchanged the November 8, 2007 report and recommendation, save with respect to the number of hours reasonably expended by counsel for the defendants on plaintiff's § 1983 and § 1985 claims (*see* Doc. 107, at 26-34, 36-38 & 40-41) and that section dedicated to expenses (*see id*., at 38-40).[1]

---

[1]    The undersigned need address the parties' objections to the Court's citation to the state litigation in this matter. (*See* Doc. 108, at 1-2 & Doc. 112, at 1-2) The parties have correctly pointed out that *Dzwonkowski v. Sonitrol of Mobile, Inc*., 892 So.2d 354 (Ala. 2004) (*Dzwonkowski II*) did not reverse *Dzwonkowski v. Sonitrol of Mobile, Inc.,* 854 So.2d 598 (Ala.Civ.App. 2002) (*Dzwonkowski I*). Accordingly, the undersigned amends the November 8, 2007 report and recommendation to reflect this change.

The parties cannot agree upon the impact of *Ex prate First Alabama Bank*, 883 So.2d 1236 (Ala. 2003) on *Dzwonkowski I*. (*Compare* Doc. 108, at 2 ("*Dzwonkowski I* was reversed on judicial estoppel grounds by *Ex parte First Alabama Bank*, 883 So.2d 1236 (Ala. 2003).") *with* Doc. 112, at 2 ("**Contrary to the erroneous allegation of the Defendants, [] *Dzwonkowski I* was not reversed 'on judicial estoppel grounds by *Ex parte First Alabama Bank*, 883 So.2d 1236 (Ala. 2003).**'")) Having read *Ex parte First Alabama Bank*, the undersigned finds, consistent with the defendants' argument, that this case abrogated *Dzwonkowski I* on judicial estoppel grounds. The Supreme Court's decision in that case reads, in relevant part, as follows:

---

The Bank maintains that it is entitled to a summary judgment based upon the doctrine of judicial estoppel. Vincent contends that the Bank waived its right to assert the defense of judicial estoppel and that the Bank cannot satisfy the requirements of privity and reliance essential to the application of the doctrine of judicial estoppel.

.          .          .

The Court of Civil Appeals concluded that because the Bank was not a party to the bankruptcy proceeding or the divorce litigation in which Vincent asserted that he did not have the $500,000 at issue in his claims against the Bank, the case did not meet the *Jinright* requirement that when a party alleges "that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action," *Jinright* [*v. Paulk*], 758 So.2d [553,] 555 [(Ala. 2000)], the parties and actions must be the same. The Court of Civil Appeals also cited *Dzwonkowski v. Sonitrol of Mobile, Inc.,* 854 So.2d 598 (Ala.Civ.App. 2002) (judicial estoppel did not apply because the parties and actions were not the same and the parties asserting the defense of judicial estoppel were not misled by nor had they detrimentally relied on the different positions taken by the opposing party), and *Hoffman v. Truck Driving Academy, Inc.,* 777 So.2d 151 (Ala.Civ.App. 2000) (judicial estoppel did not apply where the defendant did not show prejudice arising from the plaintiff's failure to disclose assets to the bankruptcy court), to support its determination. Consequently, the Court of Civil Appeals held that Vincent was not judicially estopped from bringing his claims against the Bank. *Vincent IV*, 883 So.2d at 1236.

.          .          .

Rather than resolving this case by limiting the holding in *Jinright* to those cases where the earlier action is a Chapter 13 bankruptcy proceeding, we opt for the broader approach of reevaluating the propriety of limitations upon the availability of the doctrine of judicial estoppel found in some of our earlier cases. We previously quoted from *Jinright* what was then described as "essentials to the establishment of an estoppel." Those requirements were found in *Porter v. Jolly*, 564 So.2d 434, 437 (Ala. 1990), where this Court observed that "there are a number of limitations that should be placed upon this 'doctrine of inconsistent positions,' which is the nature of an estoppel." The Bank tries to distinguish *Porter* on the ground that *Porter* applies to equitable estoppel only. However, it clearly addresses inconsistent positions in judicial proceedings. Nevertheless, the requirements for privity and reliance set forth in *Porter* focus upon the

relationship between the parties to the prior litigation as opposed to the relationship between the litigant and the judicial system.

.    .    .

In *Jinright*, there was no showing that the parties invoking judicial estoppel had been parties to the bankruptcy proceeding in which the prior inconsistent position had been taken nor had the parties invoking judicial estoppel relied upon those proceedings. Had we slavishly adhered in *Jinright* to the limitations set forth in *Porter*, we could have reached the same result simply by declining to apply the doctrine of judicial estoppel solely on those grounds without any discussion of benefit to the party accused of inconsistency and detriment to the party invoking judicial estoppel. To this extent, *Jinright* departs from rigid adherence to the requirements expressed in *Porter*.

.    .    .

The United States Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001), recently observed that "'[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle'" and then identified several factors as informative in determining the applicability of the doctrine of judicial estoppel. The Court held that for judicial estoppel to apply (1) "a party's later position must be 'clearly inconsistent' with its earlier position"; (2) the party must have been successful in the prior proceeding so that "judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or second court was misled'"; and (3) the party seeking to assert an inconsistent position must "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." No requirement of a showing of privity or reliance appears in the foregoing statement of factors to consider in determining the applicability of the doctrine of judicial estoppel.

Application of the strict standards endorsed in *Porter* would require us to reject the Bank's defense of judicial estoppel on two grounds-want of involvement of the Bank in the antecedent litigation and absence of reliance on the part of the Bank upon the result in the previous litigation. Such a result in this case is simply offensive-Vincent would be permitted to have it both ways, successfully denying ownership of an asset in the earlier proceedings and seeking its recovery in this proceeding.

4

_____

.    .    .

Application of the formulation in *New Hampshire v. Maine* yields a result that is not offensive to the judicial system. With reference to the requirement of clear inconsistency, Vincent's testimony in the divorce proceeding and his filings in the bankruptcy proceeding were completely inconsistent with the position he takes in the complaint in this action. In the earlier proceedings, he said that he did not have $500,000 in cash and certificates of deposit in a safe-deposit box; in this proceeding, he said that he did. Success of the prior proceedings cannot be challenged, because both proceedings concluded on a state of facts consistent with Vincent's not having $500,000 in cash and certificates of deposit. Finally, Vincent, if allowed to assert the inconsistent position in this proceeding, satisfies both alternative prongs set forth under the third factor of *New Hampshire v. Maine*-he would derive an unfair advantage *and* impose an unfair detriment on the Bank if not estopped.

Justice Houston, writing specially in *Southern States Ford, Inc. v. Proctor*, 541 So.2d 1081 (Ala. 1989), embraced a useful standard for weighing the need for change against the advantages of settled principles of law under the doctrine of stare decisis. He posed the question as follows: whether the ratio decidendi of earlier precedent would "'hypothetically be consented to today by the conscience and the feeling of justice of the majority of all those whose obedience is required by [that] rule of law?'" The conscience and feeling of justice of the overwhelming majority whose obedience is required to a rule that would permit Vincent to play fast and loose with the court would be, quite simply, shocked. We today embrace the factors set forth in *New Hampshire v. Maine* and join the mainstream of jurisprudence in dealing with the doctrine of judicial estoppel. To the extent that *Porter v. Jolly* and cases consistent with *Porter* have not heretofore been *sub silentio* overruled, they are expressly overruled.

.    .    .

We hold that the Bank did not waive its defense of judicial estoppel and that Vincent is estopped from asserting his claims against the Bank. We therefore reverse the judgment of the Court of Civil Appeals as it pertains to the Bank and remand the case for the Court of Civil Appeals to affirm the judgment of the trial court in favor of the Bank.

883 So.2d at 1240, 1242, 1243, 1244-1245 & 1245-1246 (most internal citations omitted).

    **A.**    **§ 1983 and § 1985 Claims.**    As the earlier report and recommendation establishes, the affidavit of Johnstone, Adams attorney Alan C. Christian, avers that his firm spent 177.75 hours on legal tasks related to plaintiff's § 1983 and § 1985 claims. (Doc. 107, at 28) One of the major problems the undersigned had with this particular request for fees was that the defendants had provided no supporting documentation from which this Court could readily verify that these hours were spent on legal tasks directed to defending plaintiff's § 1983 and § 1985 claims. (*See id*. at 29) This identified

---

    This Court cannot read *Ex parte First Alabama Bank*, a judicial estoppel case, in any other manner than as abrogating *Dzwonkowski I* on judicial estoppel grounds. *Compare id. with Dzwonkowski I*, 854 So.2d at 608 & 609 ("We hold that the doctrine of judicial estoppel is inapplicable here for at least two reasons. First, Robert and Joe Jr., the parties asserting the estoppel, were not parties to the Florida divorce action. Second, the parties claiming the estoppel did not establish that they were misled by Joe Sr.'s testimony in the Florida divorce proceedings and did not show that, as a consequence of Joe Sr.'s testimony, they changed their positions to their detriment. . . . We assume that judicial estoppel applies to quasi-judicial proceedings before administrative agencies like the Florida [Electrical Contractors Licensing] Board. Nevertheless, we conclude that all the elements for applying judicial estoppel are not met by the circumstances of the Florida Board proceedings. First, there is no indication that the inconsistent position asserted by Joe Sr.-that he held one-ninth of the Sonitrol stock-was 'successfully maintained' before the Florida Board. In other words, the Board agreed to reconsider Sonitrol's application for a license with Joe Sr. as the primary qualifier because it was satisfied that Joe Sr.'s prior bankruptcies involved a business that was not engaged in electrical contracting work, not because it was satisfied that Joe Sr. owned only one-ninth of the stock of Sonitrol. Second, the record contains no 'judgment rendered' by the Board. The May 14 order on reconsideration simply holds the application in abeyance pending receipt of further information from SouthTrust Bank of Mobile. All of the elements necessary to apply the doctrine of judicial estoppel are not present; therefore, Joe Sr.'s representations to the Florida Board do not estop him from claiming, in the present case, that he owns more than a one-ninth interest in Sonitrol. We hold that the summary judgment for Robert and Joe Jr. cannot be upheld based on the doctrine of judicial estoppel."). Accordingly, the undersigned amends the November 8, 2007 report and recommendation to reflect this further change.

deficiency has now been rectified to a large extent inasmuch as the defendants have filed with this Court certain billing invoices, not only from the Johnstone, Adams law firm but also from the Hamilton, Butler law firm, for professional services rendered in this case from September of 2005 through July of 2006. (*See* Doc. 116) The undersigned must admit, however, that the deficiency has not been totally rectified inasmuch as the undersigned is unable to readily discern from comparing those invoices with Mr. Christian's affidavit that, in fact, the Johnstone, Adams law firm spent 177.75 hours on legal services related to plaintiff's § 1983 and § 1985 claims. The Magistrate Judge is able to discern,  however, from a review of Invoices 54271, 54442, and 54581 that the Johnstone, Adams law firm spent 176.75 hours on legal services related to the foregoing claims. It is not readily apparent from Invoice 54581 where the other one hour claimed "comes from" and since it is the defendants burden to prove the number of hours expended litigating plaintiff's § 1983 and § 1985 claims, the undersigned concludes that the defendants' proof establishes that the attorneys at the Johnstone, Adams law firm spent 176.75 hours on such legal services.

The plaintiff attacks some of the entries for work performed by Johnstone, Adams on the basis that this firm appears to bill their clients in .25

hour increments whereas the Hamilton, Butler firm bills their clients in .10 hour increments. A review of the billing invoices provided by Johnstone, Adams does nothing to dispel the plaintiff's attack, it clearly appearing that attorneys working at the Johnstone, Adams firm do bill their clients in increments of 15 minutes (.25). The undersigned agrees with plaintiff that such billing practice is unreasonable for purposes of awarding attorneys' fees and, therefore, the following entries are reduced to reflect the more reasonable billing increment of 6 minutes (.1): (1) Christian's October 6, 2005 entry for review of Pugh's email is reduced from .25 to .1; (2) March's November 15, 2005 entry for reviewing the local rules regrading the page limit on briefs is reduced from .25 to .1; (3) Christian's November 30, 2005 entry for reviewing court notices is reduced from .25 to .1; (4) Christian's December 12, 2005 entry for reviewing disclosure statement and conferencing with Pugh and Sullivan is reduced from .25 to .1; and (5) Christian's January 23, 2006 entry for reviewing a court order and dictating a letter to Joseph Dzwonkowski, Jr. is reduced from .25 to .1. This results in a further reduction in the 176.75 hours claimed to 176 hours.

Plaintiff has also identified a number of instances wherein Alan Christian billed for telephone or office conferences with Joseph Sullivan and

Brian Pugh, attorneys in the Hamilton, Butler firm, but the Hamilton, Butler firm did not similarly bill their client for these conferences. (Doc. 117, at ¶¶ 6-16) A number of the telephone or office conferences plaintiff objects to are clearly related to non-§ 1983 and § 1985 claims (*see* Doc. 117, at ¶¶ 11-16) and, therefore, the undersigned does not find his attack on these entries to be well-taken since defendants are not being compensated under § 1988 for the work performed related to these claims. However, the undersigned does find plaintiff's argument compelling with respect to those telephone and/or office conferences Christian seeks to be compensated for related to plaintiff's § 1983 and § 1985 claims which Pugh and Sullivan have not sought compensation. The undersigned is led to this conclusion because the time sheets reflect that both firms were not adverse to billing their clients for the same telephone conferences related to plaintiff's § 1983 and § 1985 claims. (*See* Doc. 116, Time Sheet Entries For 10-10-05, 10-13-05, 1-4-06 & 1-18-06) Therefore, the undersigned must conclude that in those instances where Christian billed his clients but Hamilton, Butler did not bill its client, the Hamilton, Butler firm made the business determination that the conferences were not of sufficient duration to bill its client. *Cf. Norman v. Housing Authority*, 836 F.2d 1292, 1301 (11th Cir. 1988) ("Excluding excessive or otherwise unnecessary hours

under the rubric of 'billing judgment' means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis.").[2] Accordingly, the undersigned reduces in .25 hour increments the following Christian entries for telephone and/or office conferences which were not similarly billed by Pugh and/or Sullivan: (1) the November 14, 2005 entry is reduced by .5 to reflect the separate conferences with Pugh and Sullivan; (2) the November 22, 2005 entry is reduced by .5 to reflect the telephone conference with Pugh and the separate office conference with Pugh; (3) the November 28, 2005 entry is reduced by .5 to reflect the separate telephone conferences with Pugh and Sullivan; (4) the January 16, 2006 entry is reduced by .25 to reflect the telephone conference with Sullivan; and (5) the January 17, 2006 entry is reduced by .25 to reflect the telephone conference with Sullivan. This works a further two-hour reduction in the hours sought to be compensated by Johnstone, Adams; therefore, the total time for which the Johnstone, Adams firm can reasonably be compensated is 174 hours.

---

[2]     Such a finding is entirely consistent with the undersigned's earlier determination that the Johnstone, Adams law firm's practice of billing its clients in quarter-hour (.25) increments is excessive for purposes of determining the amount of a reasonable attorney's fee award under § 1988.

Finally, the undersigned cannot agree that the billing invoices provide insufficient detail of the legal services performed to permit this Court and plaintiff "to fairly evaluate the measure of time devoted to identifiable issues addressed and the work performed." (Doc. 117, at ¶ 4; *see also id.*, ¶¶ 1-3) As the undersigned has previously indicated, the affidavits and billing invoices supplied by the defendants have established to the undersigned's satisfaction that the Johnstone, Adams law firm spent a total of 174 hours on legal services related to plaintiff's § 1983 and § 1985 claims.

Turning to the time spent by the Hamilton, Butler firm on legal services related to plaintiff's § 1983 and § 1985 claims, the billing invoices answer that question unequivocally. The invoices from the Hamilton, Butler firm, together with the affidavit of Joseph Sullivan, Esquire, establish that Brian Pugh, Esquire, spent a total of fifty-four (54) hours (rather than the 53.8 hours claimed) on legal services related to these claims. (*Compare* Doc. 82, Affidavit of Joseph C. Sullivan, Jr., Esquire, at 2 ("Hamilton, Butler expended approximately 53.8 hours from the filing of the original Complaint on September 27, 2005 through the filing of the Defendants' Brief in Opposition to the Plaintiff's Motion for Leave to Amend Complaint and in Support of Defendants' Second Motion for Award of Attorneys' Fees and Other Sanctions

(Doc. 35)[3] responding to the Plaintiff's frivolous § 1983 and § 1985 claims as set forth.") *with* Doc. 116, Invoices 52096 & 52146 (time reflected on same up to March 2, 2006 is 54 hours))[4]

Other than as noted above, the undersigned cannot find any of the time claimed by these two firms responding to plaintiff's § 1983 and § 1985 claims to be unreasonable. Therefore, these defendants are awarded attorney's fees against the plaintiff, pursuant to 42 U.S.C. § 1988, in the total amount of $38,760.00.[5] The portion of the award due and owing the Johnstone, Adams

---

[3]     The docket sheet reflects that this document was filed on March 2, 2006.

[4]     As the billing invoices reflect, all time expended by Hamilton, Butler in responding to plaintiff's § 1983 and § 1985 claims was expended by Brian Pugh; Joseph Sullivan expended none of his time responding to these claims. (*See* Doc. 116)

[5]     In reaching this new award, under § 1988, the undersigned declines to stray from the earlier determination that $170.00 represents a reasonable hourly rate for all attorneys performing work in this case. (*See* Doc. 107, at 35-36) In objecting to the undersigned's conclusion in this regard, the defendants seem to indicate that an averaging of rates was inappropriate because there was not insufficient documentation and because the two attorneys who performed the lion's share of the labor bill at higher rates. (*See* Doc. 108, at 17-21) The documentation now before the Court, however, does not establish that the Court was misguided in averaging the rates to find an appropriate reasonable hourly rate. This is because none of the documentation the defendants have supplied this Court consists of evidence of the prevailing market rates for similar services by lawyers of reasonably comparable skills, experience and reputation. *See, e.g., Norman, supra,* 836 F.2d at 1299 (citations omitted). The affidavits of two of the attorneys for the defendants is simply not satisfactory evidence of prevailing market rates given the Eleventh Circuit's clear direction that "[s]atisfactory evidence at a minimum is more than the affidavit of the attorney performing the work." *Id.*; *see also id.* ("It should also be noted that in line with the goal of obtaining objectivity, satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits."). Because the defendants have supplied this Court no evidence which speaks to rates actually billed and paid in similar lawsuits, the undersigned's exercise of discretion in this matter to average the rates to obtain a reasonable

law firm is $29,580.00, while the portion of the award due and owing to the Hamilton, Butler law firm is $9,180.00.

With respect to expenses, the undersigned now has evidence of the expenses incurred by the defendants associated with defending plaintiff's § 1983 and § 1985 claims. (*See* Doc. 116) In the case of the Johnstone, Adams law firm, the expense evidence is sufficiently detailed. However, the Hamilton, Butler expense evidence does not provide as much detail. For instance, it is clear that the Johnstone, Adams law firm billed copies made "in house" at the reasonable rate of ten cents per copy while it appears that the Hamilton, Butler law firm billed for copies at the higher rate of twenty-five cents per copy. Moreover, the defendants have claimed as expenses all expenses incurred rather than solely those expenses necessitated by the defense of plaintiff's §1983 and §1985 claims. To be sure, as previously recognized by the undersigned, "all reasonable expenses incurred in case preparation . . . may be taxed as costs under § 1988[]" *ACLU v. Barnes*, 168 F.3d 423, 438 (11th Cir. 1999), and courts in this circuit have allowed recovery of expenses such as photocopying, postage, long distance phone calls, necessary travel, and on-line

_____

hourly rate was appropriate. In addition, the undersigned would also note that Brian Pugh from the Hamilton, Butler law firm, rather than Joseph Sullivan, performed all the work his firm performed defending plaintiff's § 1983 and § 1985 claims.

research, *Cullens v. Georgia Dept. of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994). However, this Court declines to order plaintiff to reimburse the defendants for any expenses not associated with defense of the §1983 and §1985 claims or copying expenses at the higher rate claimed by the Hamilton, Butler firm.

In light of the foregoing, the undersigned uses the filing date of Document 35, as suggested by Joseph Sullivan, Esquire in his affidavit (Doc. 82, at 2), as the cutoff date for awarding expenses under 42 U.S.C. § 1988. Document 35 was filed on March 2, 2006. As of this date, the Johnstone, Adams law firm had documented, allowable expenses totaling $1,532.13 and the Hamilton, Butler firm had expenses totaling $571.09. As heretofore indicated, however, that firm's copy expenses (at 25¢ per copy) are 150% higher per page than the rate charged by the Johnstone, Adams law firm. The undersigned finds that a reasonable copying expense is that charged by the Johnstone, Adams firm of 10¢ per copy. Applying this reduction works a $79.20 reduction in allowable expenses payable to the Hamilton, Butler firm. Accordingly, the undersigned recommends that the plaintiff pay to the prevailing defendants expenses totaling $2,024.02; $1,532.13 payable to the Johnstone, Adams law firm and $491.89 payable to the Hamilton, Butler law

firm.

  **B.**  <u>**The Defendants' Objections.**</u> In addition to the foregoing, the undersigned takes this opportunity to address a number of the defendants' asserted objections to other portions of the November 8, 2007 report and recommendation. First, the defendants object to the undersigned's recommended award of attorneys' fees of $10,000.00 under 28 U.S.C. § 1927 rather than the requested amount of $68,530.00. (Doc. 108, at 27; Doc. 109, at 5) The defendants do not cite to any case law in support of this objection; instead, they simply assert the position that the undersigned apparently reduced their § 1927 request based upon the "false assumption that undersigned willfully ignored Doc. 86." (Doc. 109, at 5) Interestingly, the defendants do not take exception to the undersigned's finding that they had asserted that "they are entitled to approximately $20,000.00 in Section 1927 fees against Plaintiff and/or Plaintiff's counsel, Willie James Ellison[.]" (*Compare* Doc. 107, at 43 *with* Doc. 108, at 26-27 (no objection to application set forth on page 43)) Moreover, nowhere in the Court's § 1927 analysis is there any suggestion, much less a finding, by the undersigned that he was recommending an award of attorneys' fees in the amount of $10,000.00 under § 1927, rather than the amount claimed (which the undersigned correctly found was

$20,000.00, over and above the fees claimed under § 1988,[6] not the $68,530.00 the defendants claim in their objections), because the defendants willfully ignored Document 86. Accordingly, the defendants' objection to the undersigned's § 1927 analysis is not well taken.

The undersigned, as well, declines to change the discussion regarding this Court's inherent powers. (Doc. 107, at 45-48) Again, the defendants object to the undersigned's decision in this regard on the basis that same "also appears to be related to the Magistrate's (sic) false assumption that counsel willfully ignored Doc. 86." (Doc. 109, at 6; *see also* Doc. 108, at 28 ("Perhaps the Magistrate (sic) did not feel comfortable doing so, after assuming that Defendants and their counsel 'ignored' Doc. 86 . . . and/or failed to comply with the safe-harbor provisions of Rule 11.")) However, again, there is no suggestion in the undersigned's inherent-powers discussion, much less a finding, that the Court was declining to award attorneys' fees because the defendants ignored Document 86. As indicated in the earlier report and recommendation, this Court has wide discretion in fashioning an appropriate sanction in accordance with its inherent powers. *See Chambers v. NASCO,*

---

[6]     (*See* Doc. 75, Defendants' Brief in Support of Consolidated Motion for Award of Attorneys' Fees and Other Sanctions, at 16 ("These [§ 1927] attorneys' fees approximate $20,000.00 over and above the § 1988 fees."))

*Inc.,* 501 U.S. 32, 44-45, 111 S.Ct. 2123, 2132-2133, 115 L.Ed.2d 27 (1991).

In this case, the undersigned, in exercising such discretion, has determined, after imposing attorneys' fees and costs pursuant to § 1988 and § 1927, that a fine payable to this Court is the most appropriate sanction to impose pursuant to the Court's inherent powers given the burden placed upon the Court to resolve the many motions and other requests filed. (*See* Doc. 107, at 48) The defendants have not established an abuse of discretion in this regard.

Finally, the defendants object to the undersigned's Rule 11 analysis in its entirety, primarily noting[7] that the safe-harbor provisions of the rule are not

---

[7]      Defendants also take the undersigned to task for failing to cite to a rule or "caselaw supporting his conclusion that the failure to comply with the 'safe-harbor' provisions of Rule 11 requires the denials of motions seeking Rule 11 sanctions." (Doc. 108, at 29) While it seems a bit unnecessary to address this argument by the defendants given the mandatory language of Rule 11, as well as the language contained in one of the cases the defendants rely upon in making their primary argument, that is *Brickwood, infra*, the undersigned would simply note that three circuits have reached the conclusion that a failure to comply with the safe-harbor provisions of Rule 11 requires the denial of a motion seeking Rule 11 sanctions. *See, e.g., Gordon v. Unifund CCR Partners,* 345 F.3d 1028, 1030 (8th Cir. 2003) ("Unifund failed to comply with Rule 11's procedural requirements. . . . Unifund's 'request' for sanctions was not made separately from other motions or requests and Unifund did not serve a prepared motion on Appellant prior to making any request to the court. As a result, Appellant was not afforded the benefit of the twenty-one day 'safe harbor' provision allowing him the opportunity to withdraw his allegedly frivolous pleading. 'To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion.' . . . While we certainly do not wish to condone any dilatory tactics utilized by Appellant in this case, we are unable to overlook Unifund's procedural deficiencies. The district court's awarding of sanctions against Appellant in contravention of the explicit procedural requirements of Rule 11 was an abuse of discretion."); *Ridder v. City of Springfield*, 109 F.3d 288, 297 (6th Cir. 1997) ("[A]dhering to the rule's explicit language and overall structure, we hold that sanctions under Rule 11 are unavailable

jurisdictional and, therefore, may be waived and it is "not the Magistrate's (sic) function to 'un-waive' the failure of Plaintiff and his counsel to raise the safe-harbor provisions of Rule 11 as an affirmative defense to liability under Rule 11." (Doc. 109, at 6-7; *see also* Doc. 108, at 28-30)  In making this argument, the defendants rely upon two decisions handed down by the Fourth Circuit, *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.,* 369 F.3d 385 (2004) and *Rector v. Approved Federal Savings Bank*, 265 F.3d 248 (2001). While it is true that the majority in the very divided *Rector* court did hold that "the 21-day safe harbor provision of Rule 11 is not jurisdictional and may be waived," 265 F.3d at 253, the en banc court in *Brickwood* spoke in terms of forfeiture, 369 F.3d at 394-395 ("And because Rule 11(c)(1)(A) does not implicate the district court's subject matter jurisdiction, the issue of whether a party has complied with the rule is subject to forfeiture if not timely raised."), and explained the distinction between forfeiture and waiver, 369

unless the motion for sanctions is served on the opposing party for the full twenty-one day 'safe harbor' period before it is filed with or presented to the court; this service and filing must occur prior to final judgment or judicial rejection of the offending contention."), *cert. denied,* 522 U.S. 1046, 118 S.Ct. 687, 139 L.Ed.2d 634 (1998); *Elliott v. Tilton*, 64 F.3d 213, 216 (5th Cir. 1995) ("In the present case, the record indicates that plaintiffs did not serve their motion for sanctions on the defendants and defense counsel prior to filing. The 'safe harbor' provision added to Rule 11 contemplates such service to give the parties at whom the motion is directed an opportunity to withdraw or correct the offending contention. The plain language of the rule indicates that this notice and opportunity prior to filing is mandatory. Plaintiffs did not comply with this procedural prerequisite. Therefore, the sanction and payment of costs and attorneys' fees ordered by the district court cannot be upheld under Rule 11.").

F.3d at 395 n.7 ("'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'"). Regardless of which word is properly utilized, in neither decision did the Fourth Circuit come close to suggesting that a district court cannot raise the safe-harbor provisions of Rule 11 *sua sponte* nor did the Fourth Circuit in those cases establish any unwavering guidelines for a district court to find forfeiture or waiver. *See Brickwood, supra*, 369 F.3d at 388-399; *Rector, supra*, 265 F.3d at 251-254. The proposition that a district court can raise the safe-harbor provisions of Rule 11 *sua sponte* logically extends from the mandatory language of the rule, *see Brickwood*, 369 F.3d at 389 ("It is clear from the language of the rule that it imposes mandatory obligations upon the party seeking sanctions, so that failure to comply with the procedural requirements precludes the imposition of the requested sanctions. . . . In addition, the rule serves to limit the power of the district court to impose sanctions under the rule, by expressly conditioning the court's authority to impose sanctions upon compliance with the safe-harbor provisions. . . . Rule 11(c)(1)(A) thus establishes conditions precedent to the imposition of sanctions under the rule. If those conditions are not satisfied, the Rule 11 sanctions may not be filed with the district court. If a non-compliant motion

nonetheless is filed with the court, the district court lacks authority to impose the requested sanctions."), as well as the discretion this Court enjoys in imposing sanctions, *cf. id.* at 398 ("[A] consideration of the purposes underlying Rule 11(c)(1)(A) and the extent to which these purposes would be frustrated by affirming the imposition of sanctions in this case suggests that the interests of justice would best be served by the exercise of our discretion to correct the improperly imposed sanctions. . . . [W]e believe it proper to exercise our discretion to correct the error raised by Brickwood for the first time on appeal, and we therefore reverse the district court's order imposing Rule 11 sanctions."); *Retail Flooring Dealers of America, Inc. v. Beaulieu of America, LLC*, 339 F.3d 1146, 1150 n.5 (9th Cir. 2003) ("Although Retail Flooring did not raise this argument before the district court, an appellate court can review an issue not raised nor objected to prior to appeal if necessary to prevent manifest injustice."). Moreover, the defendants insistence that the plaintiff has waived (or forfeited) the safe-harbor provisions of Rule 11(c)(1)(A) is simply not logically dictated by either Fourth Circuit decision. *See Brickwood,* 369 F.3d at 396 & 399 ("[W]e conclude that the safe-harbor provisions of Rule 11 are inflexible claim-processing rules and that a district court exceeds its authority by imposing sanctions requested through a

20

procedurally-deficient Rule 11 motion. However, because Rule 11's safe-harbor provisions do not implicate the district court's subject-matter jurisdiction, **claims of non-compliance with those provisions are subject to the general rule requiring issues to be first raised with the district court**. . . . **In this case, Brickwood forfeited the safe-harbor compliance issue by not raising it before the district court."**[8]) (emphasis supplied; footnote added); *Rector, supra*, 265 F.3d at 253-254 ("Here, it is undisputed that neither Rector nor the Trust objected to Approved's service of the Rule 11 motion **until the case reached this Court on its second appeal**, after remand. **Neither Rector nor the Trust raised the argument to the district court in the first instance nor raised it to this Court in their first appeal.** When presented with that appeal, we vacated the district court's opinion and remanded solely 'so that the district court may apply the proper standard in assessing the Rule 11 sanctions.' . . . Our remand order did not allow the district court to consider any issue other than the proper assessment of the sanction amount. Rector and the Trust's failure to raise Approved's failure to comply with the 21-day safe harbor provision in the district court in the first instance constituted a waiver of this argument.") (emphasis supplied; footnotes

---

[8]      The *Brickwood* court gives no indication about when those issues should be raised with the district court, only that they should be raised first with the district court.

omitted).[9] Accordingly, the defendants' argument that the undersigned's Rule 11 analysis is fatally flawed is not well taken.

## CONCLUSION

In light of the foregoing discussion, the undersigned supplements and amends his November 8, 2007 report and recommendation (Doc. 107) by recommending that the defendants be awarded additional attorneys' fees under 42 U.S.C. § 1988 for legal services performed in responding to plaintiff's § 1983 and § 1985 claims. The total attorneys' fee award under § 1988, to be paid by plaintiff, should be **$38,760.00**, $28,580.00 payable to the Johnstone, Adams law firm and $9,180.00 payable to the Hamilton, Butler law firm. In addition, the undersigned recommends that the defendants be reimbursed the expenses they reasonably expended in responding to plaintiff's § 1983 and § 1985 claims, totaling **$2,024.02**, $1,532.13 payable to the Johnstone, Adams law firm and $491.89 payable to the Hamilton, Butler law firm. The remaining portions of the undersigned's sanctions' award remains unchanged.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation

---

[9]    Instead, based on dicta from both cases it is apparent that the plaintiff can raise the defendants' failure to comply with the safe-harbor provisions of Rule 11 at any time in this Court and, as aforesaid, nothing prevents this Court from raising noncompliance with those same provisions *sua sponte*.

of the Magistrate Judge.

**DONE**  this the 28th day of February, 2008.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.        ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.        ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

      S/WILLIAM E. CASSADY
      UNITED STATES MAGISTRATE JUDGE